GASKINS, J.
 

 [, The defendants, Brenda Owens and Robin Matthews, appeal from a trial court judgment that awarded the plaintiff, Family Care Services, Inc., attorney fees in the amount of $43,160.50 and costs in the amount of $10,212.98, in connection with the grant of a preliminary injunction. The plaintiff has answered the appeal, seeking additional attorney fees for defending this appeal. For the following reasons, we affirm the trial court judgment. We reject the plaintiffs request for additional attorney fees on appeal.
 

 FACTS
 

 Brenda Owens (“Owens”) and Robin Matthews (“Matthews”) were employees of Family Care Services, Inc. (“FCS”), a Louisiana corporation that provides services for elderly and developmentally disabled adults. Both Owens and Matthews signed employment agreements, which contained non-competition, non-solicitation, and confidentiality provisions enforceable for two years after separation from employment.
 
 [1]
 

 
 *237
 
 laOwens was employed by FCS from June 24, 2002, to March 18, 2008. Immediately after resigning from FCS, Owens applied for and was hired by Certicare,
 
 *238
 
 Inc. (“Certicare”),
 
 [2]
 
 a direct competitor of FCS. Matthews was employed by FCS from April 3, 2007, to November 2, 2007; she began to work with Certicare on November 12, 2007.
 

 FCS filed a motion for a preliminary injunction in April 2008, alleging that Owens and Matthews had violated the terms of their employment agreements. FCS later amended its petition to request damages, attorney fees, and costs as allowed in the contract with the defendants. A hearing on the preliminary injunction was held in November 2008. In April 2009, the trial court signed a preliminary injunction enjoining Owens and Matthews from soliciting clients of FCS, from soliciting current or former employees of FCS for employment with Certicare, and from continuing employment with Certicare in any capacity in which their duties would be substantially similar to their duties performed while employed by FCS. The trial court scheduled the trial on the permanent injunction for November 2009.
 

 In June 2009, FCS filed a motion for an award of attorney fees and costs related to the issuance of the preliminary injunction. At the November 2009 trial, FCS dismissed its request for a permanent injunction against Owens since she was abiding by the April 23, 2009, judgment and only four months remained in her two-year non-competition agreement. FCS dismissed its request for a permanent injunction against Matthews since her |4 employment with FCS had terminated more than two years prior to the date of the trial. Therefore, the two-year term on her non-competition and non-solicitation agreement with FCS had expired, mooting the plaintiffs request for injunctive relief. FCS also dismissed its claim for damages.
 

 The trial court heard arguments from the parties on attorney fees and costs in connection with obtaining the preliminary injunction. On December 4, 2009, the trial court issued a judgment ordering Owens and Matthews to pay FCS attorney fees in the amount of $43,160.50 and costs in the amount of $10,212.98. Owens and Matthews appealed.
 

 SECURITY FOR PRELIMINARY INJUNCTION
 

 The defendants argue that the trial court erred by issuing a preliminary injunction against them to enforce the agreement at issue here without setting and requiring FCS to post the statutorily required security. This argument is without merit.
 

 Legal Principles
 

 Non-competition agreements in Louisiana are governed by La. R.S. 23:921, which provides in pertinent part:
 

 A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
 
 [3]
 

 [[Image here]]
 

 
 *239
 
 |SC. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
 

 D. For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
 

 [[Image here]]
 

 H. Any agreement covered by Subsection B, C, E, F, G, J, K, or L of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor’s failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order in-junctive relief enforcing the terms of the agreement....
 

 Regarding injunctive relief, La. C.C.P. art. 3601 provides in pertinent part:
 

 A. An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law;....
 

 C. During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.
 

 IfiD. Except as otherwise provided by law, an application for injunctive relief shall be by petition.
 

 Discussion
 

 Even though there is no dispute that the agreement at issue here complies with La. R.S. 23:921, the defendants argue that the trial court erred in granting a preliminary injunction without requiring the plaintiff to post security. It is questionable whether this argument is properly before the court for decision. A preliminary injunction is an appealable judgment under La. C.C.P. art. 3612. Such an appeal must be taken within 15 days from the date of the order or judgment. The defendants in this matter did not appeal from the granting of the preliminary injunction. Therefore, the preliminary injunction became final.
 

 However, the defendants essentially contend that the preliminary injunction was invalid and void
 
 ab initio
 
 and never took effect due to the failure to require the plaintiff to post security.
 

 La. C.C.P. art. 3610 states in pertinent part:
 

 A temporary restraining order or preliminary injunction shall not issue unless
 
 *240
 
 the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law. The security shall indemnify the person wrongfully restrained or enjoined for the payment of costs incurred and damages sustained....
 
 [4]
 

 This demonstrates that security is not required for the validity of a preliminary injunction in every instance.
 

 Further, the jurisprudence does not hold, as argued by the defendants, that the failure to require the posting of security prior to entry of a 17preliminary injunction means that the injunction never became effective. The remedies available for failure to require security in connection with the issuance of a preliminary injunction vary according to the circumstances of the case and do not necessarily render the injunction void or require it to be set aside. As stated in Frank L. Maraist, 1A
 
 Louisiana Civil Law Treatise: Civil Procedure-Special Proceedings,
 
 § 1.2, n. 35 (2005):
 

 The jurisprudence provides for optional remedies when a preliminary injunction is issued without security. The appellate court may either set aside the preliminary injunction or remand the matter to the trial court for the fixing of security.
 
 High Plains Fuel Corp. v. Carto Intern. Trading, Inc.,
 
 640 So.2d 609 (1st Cir.1994);
 
 Stuart v. Haughton High School,
 
 614 So.2d 804 (2d Cir.1993) and the cases cited therein. In cases where the plaintiffs right to an injunction seems beyond question, courts have remanded for the posting of bond
 
 id.; Liberty Bank & Trust Co. v. Dapremont,
 
 844 So.2d 877 (4th Cir.2003) (plaintiff was clearly entitled to injunction with bond; however, the trial judge did not require security.
 
 Held,
 
 on appeal, the court should not dissolve the injunction, but should remand to the trial court to fix the amount of the bond).
 
 Bonomolo v. HMC Management Corp.,
 
 477 So.2d 780 (4th Cir.1985). The “interests of justice and judicial economy” have also been cited by courts that have chosen to remand rather than set aside the injunction.
 
 See, e.g., Hernandez v. Star Master Shipping Corp.,
 
 653 So.2d 1318 (1st Cir.1995).
 

 However, some cases maintain that the better approach when a preliminary injunction has been issued without bond is to vacate and set aside the injunction.
 
 See Advanced Collision Services, Inc. v. State, Dept. of Transp.,
 
 631 So.2d 1245 (5th Cir.1994);
 
 Stuart v. Haughton High School,
 
 614 So.2d 804 (2d Cir.1993);
 
 Lambert v. Lambert,
 
 480 So.2d 784 (3d Cir.1985);
 
 Cochran v. Crosby,
 
 411 So.2d 654 (4th Cir.1982).
 
 Compare Bayou Hunting Club of Hunter v. DeSoto Parish Police Jury,
 
 569 So.2d 252, 254 (2d Cir.1990) (“This circuit ... will remand rather than setting aside an otherwise valid preliminary injunction that fails to fix security”).
 

 Even where the court sets aside a preliminary injunction for failure to comply with Article 3610, the decision is often based on the totality of the circumstances.
 
 See, e.g., Stuart v. Haughton High School,
 
 614 So.2d 804 (2d Cir.1993) (failure to post security justified vacation of preliminary injunction where the trial court permitted the defendant to take a |8suspensive appeal, nine months had elapsed since the grant of injunctive relief, and there was question as to whether such relief was still necessary).
 

 We also note that the defendants contractually waived the requirement that bond be set prior to the issuance of the preliminary injunction. The agreement
 
 *241
 
 between the parties regarding injunctive relief states:
 

 9.
 
 REMEDIES, INJUNCTIVE RELIEF
 

 It is recognized and agreed by the [parties] that, in the event EMPLOYEE should breach or violate any of the terms or provisions of the covenants and agreements set forth in Section 4, 5, 6, 7, and 8 hereof, great loss and irreparable damage would be suffered by FAMILY CARE. EMPLOYEE further acknowledges and agrees that each such covenant and agreement is reasonably necessary to protect and preserve FAMILY CARE’s rights and interest. Accordingly, the parties hereto expressly agree that FAMILY CARE shall have the right, independent of and in addition to any provision for other remedies herein, and in addition to all of the remedies provided at law or in equity, to injunc-tive relief by any appropriate legal means, including but not limited to, a preliminary or temporary restraining order and a permanent injunction, for breach of any of these covenants and agreements. In the event that FAMILY CARE seeks an injunction hereunder,
 
 EMPLOYEE hereby waives any requirements that FAMILY CARE post a bond or any other security.
 
 Furthermore, both [parties] agree that injunctive relief shall be available to FAMILY CARE for as long as EMPLOYEE is in breach of any provisions under this Agreement. The existence of any claim, demand, action or cause of action to EMPLOYEE against FAMILY CARE, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by FAMILY CARE of such covenants and agreements. All remedies provided under this Agreement shall be taken and construed as cumulative and in addition to every other remedy provided for herein or by law. [Emphasis supplied.]
 

 However, because the defendants failed to object timely to the failure to set a bond, we do not reach consideration of whether the parties were within their rights to waive the posting of security.
 

 | .ATTORNEY FEES AND COSTS
 

 The defendants argue that the trial court erred by awarding attorney fees and costs to FCS since it voluntarily dismissed its permanent'injunction against the defendants. According to the defendants, the issuance of a preliminary injunction was not a “judgment” under the terms of the agreement. The defendants contend that a plaintiff, such as FCS, who dismisses the principal action on which a claim for attorney fees and costs are made cannot be considered the “prevailing party” because no judgment on the merits of the case was ever rendered. This argument is without merit.
 

 Legal Principles
 

 A party shall recover attorney fees only when authorized by statute or stipulated by contract.
 
 Murray v. German Mutual Insurance Company,
 
 87,697 (La.App.2d Cir.9/24/03), 856 So.2d 81,
 
 writ denied,
 
 2003-3168 (La.2/13/04), 867 So.2d 698. Contracts have the effect of law for the parties and must be performed in good faith. La. C.C. art.1983. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. Where factual findings are pertinent to the interpretation of a contract, those factual findings are subject to the manifest error standard of review.
 
 Murray v. German Mutual Insurance Company, supra.
 
 Parties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971. This “freedom of contract” signifies that parties to an agreement have the right and power to construct their own bargains. However, the state may legitimately restrict the parties’ right to con
 
 *242
 
 tract if the proposed bargain is found to have some deleterious | ineffect on the public or to contravene some other matter of public policy. Therefore, in a free enterprise system, parties are free to contract except for those instances where the government places restrictions for reasons of public policy.
 
 CDI Corporation v. Hough,
 
 2008-0218 (La.App. 1st Cir.3/27/09), 9 So.Sd 282.
 

 Discussion
 

 In this case, there is no statutory provision for the award to the plaintiff of attorney fees or costs. The recovery of attorney fees and costs is dependent upon the contract between the parties. The employment agreement at issue here provides:
 

 12.
 
 ATTORNEY’S FEES
 

 In the event that either party should breach any provisions or term of this Agreement, or fail to perform any duty herein, and the other party employs an attorney to protect its interest therein and obtains a judgment in its favor, then the prevailing party shall be entitled to- reasonable attorney’s fees, costs of the action and pre-judgment and post-judgment interest at the legal rate of interest on all judgments obtained hereunder. [Emphasis added].
 

 Under the terms of the contract at issue in this matter, either party is entitled to attorney fees and costs on a showing of a breach of the agreement or failure to perform a duty specified in the agreement, employment of an attorney to protect its interests, and obtaining a judgment in favor of the prevailing party.
 

 According to the defendants, the preliminary injunction is interlocutory and not a final judgment on the merits. It is granted on a showing of
 
 prima facie
 
 evidence supporting a claim and is aimed at maintaining the status quo pending a hearing on entitlement to a permanent ^injunction. The defendants maintain that, under La. C.C.P. art. 1841, a preliminary injunction does not determine the merits, but only preliminary matters.
 
 [5]
 
 We note that, under La. C.C.P. art.2083, a judgment must be final to be appealable, or be an interlocutory judgment for which a special exception has been granted.
 
 [6]
 
 A preliminary injunction is an interlocutory judgment in which the right of appeal is granted by law. La. C.C.P. art. 3612(B) and (C) provide:
 

 B. An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction, but such an order or judgment shall not be suspended during the pen-dency of an appeal unless the court in its discretion so orders.
 

 C. An appeal from an order or judgment relating to a preliminary injunction must be taken, and any bond required must be furnished, within fifteen days from the date of the order or judgment. The court in its discretion may stay further proceedings until the appeal has been decided.
 

 
 *243
 
 Under this statutory scheme, the preliminary injunction entered by the trial court was an interlocutory judgment, but was also an enforceable and 11?appealable judgment. Therefore, under the wording of the contract in this case, the preliminary injunction was a judgment entitling FCS to attorney fees and costs.
 

 The defendants next argue that FCS is not a “prevailing party” under the terms of the agreement. In support of this claim, they cite federal jurisprudence interpreting the meaning of a prevailing party.
 
 [7]
 
 The federal cases construing the definition of a prevailing party are largely based upon 42 U.S.C. § 1988(b) which allows the award of attorney fees in certain enumerated instances.
 
 [8]
 
 In
 
 Sole v. Wyner,
 
 551 U.S. 74, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007), the United States Supreme Court considered whether a plaintiff who gained a preliminary injunction in an action under 42 U.S.C. § 1983, but was denied a permanent injunction after a dispos-itive adjudication on the merits, qualified as a “prevailing party” under 42 U.S.C. § 1988(b) for the award of attorney fees.
 

 | isThe Supreme Court stated that a plaintiff who secures a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against her, has won a battle but has lost the war. The Supreme Court ruled that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under 42 U.S.C. § 1988(b) if the merits of the case are ultimately decided against her.
 

 The present case is distinguishable from
 
 Sole.
 
 Here, the authority for the award of attorney fees is contractual and not statutory. The wording of the contract in the present case does not track that of 42 U.S.C. § 1988(b) in any way. The federal statute provides that a trial court may, in its discretion, award attorney fees to a prevailing party. The contract in this case specifically provides for attorney fees if certain conditions are met. Those requirements were fulfilled in this case. Specifically, in this case, the preliminary injunction obtained by the plaintiff was an enforceable and appealable judgment.
 

 Further, in
 
 Sole,
 
 the permanent injunction was denied on the merits due to the plaintiffs refusal to abide by the terms of the preliminary injunction. In the present matter, FCS voluntarily dismissed its claim for a permanent injunction, not because of any deficit in its entitlement to a permanent injunction, but because, essentially the matter had become moot due to the passage of time. Accordingly, we do not find the federal authority argued by the defendants to be persuasive in this
 
 *244
 
 matter. We conclude that, limited to the facts of this case, FCS obtained a judgment in 114its favor in the form of a preliminary injunction, was the prevailing party, and thus was entitled to attorney fees under the terms of the contract.
 
 [9]
 

 We note that the defendants failed to object to the amount of the attorney fees and costs awarded.
 

 ADDITIONAL ATTORNEY FEES ON APPEAL
 

 The plaintiff answered the appeal in this matter, arguing that FCS is entitled to additional attorney fees and costs in connection with defending this appeal. We reject this request.
 

 The general rule is that an increase in attorney fees is usually allowed where a party was awarded attorney fees by the trial court and is forced to and successfully defends an appeal. However, even though requested, additional attorney fees may not be granted where the appellate court finds that the amount awarded in the trial court was sufficient to compensate counsel for both the work at the trial court and the appellate court levels.
 
 Sims v. Sun Chemical Corporation,
 
 34,947 (La. App.2d Cir.8/22/01), 795 So.2d 439. See also
 
 Harbor v. St. Frances Cabrini Hospital,
 
 2001-1551 (La.App. 3d Cir.5/15/02), 817 So.2d 1269,
 
 writ denied,
 
 2002-1684 (La.10/4/02), 826 So.2d 1125. In this case, we find that the attorney fee award of $43,160.50, along with costs of $10,212.98, for this preliminary injunction is more than sufficient to compensate counsel for work done in this court and in the court below. Accordingly, we deny the request by FCS for additional attorney fees for the defense of this appeal.
 

 | ^CONCLUSION
 

 For the reasons set forth above, we affirm the judgment of the trial court granting a preliminary injunction without the requirement of posting security. We also affirm the award of attorney fees and costs to the plaintiff, Family Care Services, Inc., against the defendants, Brenda Owens and Robin Matthews, in connection with obtaining the preliminary injunction. We deny the request of the plaintiff for additional attorney fees for defending this appeal. Costs in this court are divided evenly between the plaintiff and the defendants.
 

 AFFIRMED; REQUEST FOR ADDITIONAL ATTORNEY FEES DENIED.
 

 [1]
 

 . The agreement between the plaintiff and the defendants provided as follows:
 

 4.
 
 AGREEMENT NOT TO SOLICIT CUSTOMER/CONSUMERS
 

 EMPLOYEE agrees that during his/her employment by FAMILY CARE and for a period of two (2) years following the termination of or separation from such employment for any reason whatever, in-eluding resignation, EMPLOYEE will not (except on behalf of or with the prior written consent of FAMILY CARE) within the Area, either directly or indirectly, on his/her own behalf or in the service or on behalf of others [ (i)] solicit, divert, provide services to, or appropriate to a Competing Business of FAMILY CARE, or (ii) attempt to solicit, divert, or appropriate
 
 *237
 
 to or for any competing Business, any consumer of FAMILY CARE who was provided service by or under the direct supervision of EMPLOYEE during the last two (2) years of his/her employment by FAMILY CARE.
 

 5.
 
 AGREEMENT NOT TO SOLICIT EMPLOYEES
 

 EMPLOYEE agrees that during his/her employment by FAMILY CARE and for a period of tow [sic] (2) years following the termination of such employment for any reason whatsoever, EMPLOYEE will not, either directly or indirectly, on his/her own behalf or in the service or on behalf of others, solicit, divert or hire away or attempt to solicit, divert or hire away to any Competing Business, any person employed by FAMILY CARE, and whether or not such employment is pursuant to a written agreement, and whether or not such employment is for a determined period or is at-will.
 

 6.
 
 AGREEMENT NOT TO COMPETE BY GOING INTO BUSINESS
 

 EMPLOYEE agrees that during his/her employment by FAMILY CARE and for a period of two (2) years following the termination or resignation of such employment for any reason whatsoever, he/she shall not within the Area, set up, start up, establish, begin, join a business, company, corporation, partnership or any other entity (hereafter in this paragraph jointly referred to as a "Entity”) which engages in any business which is the same as or essentially the same as FAMILY CARE's Business. The intent of this provision is to assure that FAMILY CARE, to the full extent possible under La. R.S. 23:921, has protection against competition by EMPLOYEE.
 

 7.
 
 AGREEMENT NOT TO COMPETE BY WORKING FOR ANOTHER
 

 EMPLOYEE agrees that during his/her employment by FAMILY CARE and for a period of two (2) years following the termination or resignation of such employment for any reason whatsoever, he/she will not (except on behalf of or with the prior written consent of FAMILY CARE) within the Area, either directly or indirectly, in the service or on behalf of others in a capacity as employee or contractor, which involves duties and responsibilities identical or substantially similar to those EMPLOYEE shall perform for the FAMILY CARE, and/or engage in any business which is the same as or essentially the same as FAMILY CARE’s Business (any business carrying on such activities being herein called a "Competing Business”)
 

 8.OWNERSHIP AND NON-DISCLOSURE AND NON-USE OF CONFIDENTIAL INFORMATION
 

 a. EMPLOYEE acknowledges and agrees that all Confidential Information, and all physical embodiments thereof, are confidential to and shall be and remain the sole and exclusive property of FAMILY CARE and that any Confidential Information prepared or created by EMPLOYEE shall be considered work for hire. Upon request by FAMILY CARE, and in any event upon termination of his/her employment with FAMILY CARE for any reason, EMPLOYEE shall promptly deliver to FAMILY CARE all property belonging to FAMILY CARE including without limitation, all Confidential Information (and all embodiments thereof) then in his/her custody, control, or possession.
 

 b. EMPLOYEE agrees that during the term of his/her employment by FAMILY CARE and for a period of two (2) years following the termination of such employment for any reasons whatsoever, EMPLOYEE will not disclose or make available, directly, or indirectly, any Confidential Information to any person, concern, or entity, except in the proper performance of his/her duties and responsibilities hereunder or with the prior written consent of FAMILY CARE.
 

 c. EMPLOYEE agrees that he/she shall at all times during his/her employment and after the termination of said employment comply with the privacy and security requirements of HIPPA regarding consumer records and the information contained in consumer records.
 

 The “Area” covered by the agreement included the parishes of "Union, Morehouse, West Carroll, East Carroll, Lincoln, Ouachita, Rich-land, Madison, Jackson, Caldwell, Franklin, West Monroe, Tensas, Winn, LaSalle, [Cata-houla], Grant, Concordia, Vernon, Rapides, Avoyelles, Caddo, Bossier, Webster, Claiborne, DeSoto, Red River, Bienville, Sabine, and Natchitoches.”
 

 [2]
 

 . Certicare was named as a defendant but was voluntarily dismissed by FCS prior to the two-day hearing in November 2008.
 

 [3]
 

 . After the entry of the judgment on appeal in this matter, La. R.S. 23:921(A)(1) was amended and reenacted by Acts 2010, No. 164, to provide that:
 

 A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
 
 However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.
 
 [Emphasis supplied.]
 

 [4]
 

 . Those instances in which security is dispensed with by law include cases involving domestic violence, dating violence, stalking, or sexual assault.
 

 [5]
 

 . La. C.C.P. art. 1841 provides:
 

 A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final. A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.
 

 A judgment that determines the merits in whole or in part is a final judgment.
 

 [6]
 

 . La. C.C.P. art.2083 provides in pertinent part:
 

 A. A final judgment is appealable in all causes in which appeals are given by law, whether rendered after hearing, by default, or by reformation under Article 1814.
 

 [[Image here]]
 

 C. An interlocutory judgment is appeal-able only when expressly provided by law.
 

 [7]
 

 . See
 
 Hanrahan v. Hampton,
 
 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980);
 
 Farrar v. Hobby,
 
 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992);
 
 Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,
 
 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).
 

 [8]
 

 . 42 U.S.C. § 1988 provides in pertinent part: (b) Attorney’s fees
 

 In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney’s fees, unless such action was clearly in excess of such officer’s jurisdiction.
 

 [9]
 

 . We reject the argument by the defendants that our ruling will "open the floodgates” for plaintiffs to file for preliminary injunctions, dismiss them, and then collect attorney fees and costs without proving their allegations. As noted earlier, the entitlement to attorney fees in this matter is governed by the contract between the parties. Without such an agreement, there is no entitlement to attorney fees.