Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,336-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KELLY FULLER,                                    Plaintiff-Appellant
ADMINISTATOR OF THE
ESTATE OF REVOYDA FULLER

versus

ROBERT LANE PITTARD &                            Defendants-Appellees
ANDREW JACOBS

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 82138

Honorable Amy Burford McCartney

* * * * *

THE KING LAW FIRM                                Counsel for Appellant,
By: C. Hunter King                               Kelly Fuller,
                                                 Administrator

CHARLOTTE C. McDANIEL

E. CHARLES JACOBS                                Counsel for Appellee,
                                                 Robert Lane Pittard

KITCHENS LAW FIRM                                Counsel for Appellee,
By: Richard Russell Ray                          Andrew Jacobs

* * * * *

Before ROBINSON, HUNTER, and ELLENDER, JJ.

**HUNTER, J.**

Plaintiff, Kelly Fuller, administrator for the Estate of Revoyda V. Fuller, appeals a district court judgment sustaining a peremptory exception of prescription and a dilatory exception of improper use of a summary proceeding filed by defendants, Robert Lane Pittard and Andrew Jacobs. Plaintiff also appeals the portion of the judgment casting her liable, in solido, with the succession for attorney fees, costs, and expenses defendants incurred in defending this action. Defendant Andrew Jacobs has answered the appeal seeking damages, additional attorney fees, and costs for a "frivolous appeal." For the following reasons, we affirm the trial court's judgment, and we deny Jacobs' request.

## FACTS

In 2015, Revoyda V. Fuller ("the decedent") was an 82-year-old widow suffering from severe cognitive impairments. Bradley Ford, an acquaintance of the decedent, persuaded her to donate to him certain tracts of immovable property in DeSoto Parish; the property had lucrative mineral leases. Soon thereafter, Ford evicted the decedent from the home and land.

The decedent did not have any children or direct descendants. The decedent moved in with her great niece, Rekeisha Fuller ("Rekeisha"). Once the decedent divulged she did not intend to donate her property to Ford, Rekeisha began searching for legal representation to have the donations revoked. On October 13, 2015, the decedent executed a power of attorney, authorizing Rekeisha to act on her behalf. In January 2016, Rekeisha retained defendants, Robert Lane Pittard and Andrew Jacobs, to initiate proceedings to annul the donations and restore the decedent's land and home to her ownership. Defendants were retained pursuant to a standard

contingency contract, which provided defendants would be entitled to one-third of the amount recovered, if recovery was made. However, in the event no recovery was made, defendants would not be owed any fees or costs.

On November 3, 2015, defendants, as undersigned counsel for "Dexter O. Fuller, as agent for Revoyda V. Fuller," filed a petition to nullify the acts of donation and to revoke the power of attorney previously granted to Ford.[1] On January 14, 2016, defendants filed a pleading entitled, "Petition for Full Interdiction: Motion and Order for Appointment of Examiner and Motion for Judgment of Temporary Limited Interdiction." The trial court granted a temporary, limited interdiction, granting Rekeisha the authority to represent the decedent in the proceedings to have the improper donations annulled. Rekeisha was appointed limited curatrix, Dexter Fuller, the decedent's nephew was appointed limited undercurator, and attorney Pugh "Sonny" Huckaby, III was appointed curator for the decedent.

By judgment dated October 20, 2017, the decedent's donations to Ford were rendered absolutely null due to her lack of capacity, and the decedent was restored as owner of the property. During the interdiction proceedings, the trial court reviewed medical evidence and other documents, including the contingency agreement. Following a contradictory hearing, on August 28, 2018, the trial court signed a judgment ordering the full interdiction of the decedent, and appointing Rekeisha and Dexter full curatrix and full undercurator. The judgment further provided:

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that REKEISHA M. FULLER, curatrix for the interdict,

[1] Pursuant to a previous power of attorney, the decedent's nephew, Dexter O. Fuller, was the decedent's attorney-in-fact.

REVOYDA V. FULLER, is hereby authorized to execute any and all documents to comply with the terms of the contingency agreement entered into with R. LANE PITTARD and ANDREW C. JACOBS including, but not limited to, the execution of the deed to immovable property recovered and the repayment of expenses advanced by R. LANE PITTARD and ANDREW C. JACOBS.

***

The August 28, 2018 judgment was not appealed. Subsequently, Rekeisha executed a deed transferring one-third of the immovable property recovered to defendants (one-sixth was transferred to Pittard, and one-sixth was transferred to Jacobs). However, defendants deferred collecting the remaining debt during the decedent's lifetime "as the interdict may need money for her medical expenses and personal care."

The decedent died on October 12, 2020. On February 8, 2021, plaintiff, Kelly Fuller ("Fuller"), was appointed administrator of the decedent's succession. On February 18, 2021, defendants filed creditor claims in the succession; they later filed motions for summary judgment seeking payment of unpaid attorney fees.[2] A hearing on defendants' motion for summary judgment was conducted on April 20, 2021. During the hearing, defendants argued they were each owed attorney fees in the amount of $169,051.58. Conversely plaintiffs contended the amount owed to defendants did not exceed $80,000 each. The trial court granted partial summary judgment in favor of defendants, stating:

The Court is going to grant the motion in part as to the fact that [defendants] are in fact entitled to an amount payable from the succession for royalties that were received in a lump sum

---

[2] However, on April 19, 2021, two days prior to the hearing on the motion for summary judgment, plaintiff's then-counsel, Terry McGlothen, faxed to the DeSoto Parish clerk of court a "Petition for Absolute Annulment and for Declaratory Relief." However, McGlothen did not deliver a copy to the clerk's office within seven days or pay the filing fees. In a subsequent email, McGlothen informed defendants' counsel, "The original was never filed," and "we are not proceeding with the Petition for Annulment." McGlothen passed away on December 28, 2021.

3

payment to the Succession of Revoyda Fuller. And that payment was in the approximate amount of one point two million dollars.

***

So, none of us, as we sit here today, have . . . made that calculation precisely, but I believe that that's something that the parties should be able to make. And, if not, Ms. Deas will be able to make that calculation.

The court appointed Debra Deas, a certified public accountant, to calculate the specific amount of attorney fees owed. The judgment granting partial summary judgment was not appealed. The amount owed was determined to be $129,381.37, payable to each defendant, and was paid by Fuller as administrator.[3]

Nevertheless, plaintiff retained new counsel, and on May 27, 2022, she filed a "Petition for Absolute Annulment and for Declaratory Relief." Plaintiff alleged, *inter alia*: the contingency fee agreement, allowing for the transfer of one-third of the decedent's property to defendants is an absolute nullity, and consequently, the August 28, 2018 judgment, which authorized Rekeisha to execute a deed transferring one-third of the decedent's property to defendants, is an absolute nullity. Plaintiff sought a judgment declaring the August 28, 2018 judgment an absolute nullity and to determine "reasonable legal fees" based on the factors set forth in *State, Dept. of Transp. & Dev. v. Williamson*, 597 So. 2d 439 (La. 1992).

In response, defendants filed a peremptory exception of prescription and a dilatory exception of improper cumulation of actions. Defendants argued plaintiff was aware of the circumstances forming the basis of claims

---

[3] On October 26, 2021, Fuller filed a Tableau of Distribution, showing the debts she had paid on behalf of the succession. The amounts paid to defendants were included in the tableau.

4

when her former counsel faxed the petition to the clerk of court in April 2021; however, the petition was not actually filed until May 2022.

Following a hearing, the district court sustained the exceptions. The court stated:

> Well, I think that the issue that we're here on is the fact that she knew about this issue when she [faxed] the petition in April *** of 2021. She didn't follow up with the original to actually file it. So, she knew about it on that date. And then you waited more than a year. And that's not just a technicality, that's the law.
>
> ***
>
> Well, I mean the problem with a contingent fee on property, okay, is that when they took the contingent fee the[y] didn't know whether there were going to be any royalties. The royalties that are, you know, being generated right now, the well could go dry tomorrow and there would be no more. There's not going to be a way to know the precise amount when you take a contingent fee involving property because you don't know. You're never going to know. They're not going to be able to give you an answer today of what that amount might be in the future because they don't know.
>
> ***

The court also awarded to defendants the fees and costs incurred in defending the nullity action, casting Fuller, in her capacity as administrator of the decedent's estate, "jointly and in solido" with the estate, "with all attorney's fees, costs, and expenses of [defendants] incurred in defending the [petition to annul] and any related or future actions resulting from the [petition to annul] in an amount to be determined by the Court after a hearing on the issue of attorney fees[.]"

Plaintiff appeals.

## DISCUSSION

Plaintiff contends the trial court erred in sustaining the exception of prescription. Plaintiff argues the action to annul was based on an absolutely null contract; therefore, the action does not prescribe. Plaintiff further

5

asserts the attorney fees "for what amounts to an interdiction case" are "excessive per se," and the Rules of Professional Conduct prohibit defendants from making an agreement for, charging, or collecting an unreasonable fee. Consequently, plaintiff maintains the judgment authorizing the enforcement of the contract is an absolute nullity because it was based upon an absolutely null contract.

Generally, the party who asserts the peremptory exception of prescription has the burden of proof. *In re Medical Review Panel of Heath*, 21-01367 (La. 6/1/22), 345 So. 3d 992; *Spott v. Otis Elevator Co.*, 601 So. 2d 1355 (La. 1992); *Bryant v. Tokio Marine HCC*, 54,771 (La. App. 2 Cir. 11/16/22), 351 So. 3d 837. However, the burden of proof shifts to the plaintiff when his petition appears prescribed on its face, and he contends that prescription was either suspended or interrupted. *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-00061 (La. 10/10/21), 333 So. 3d 368; *Hogg v. Chevron USA, Inc.*, 09-2632 (La. 7/6/10), 45 So. 3d 991.

When evidence is introduced at the hearing on the peremptory exception, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Stevenson v. Progressive Security Ins. Co.*, 19-00637 (La. 4/3/20), 341 So. 3d 1202; *Cariere v. The Kroger Store*, 52,846 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1150.

A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed. La. C.C. art.2030.

A final judgment shall be annulled if it is rendered against an incompetent person not represented as required by law. La. C.C.P. art. 2002(A). A defendant who voluntarily acquiesced in the judgment, or who

6

was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002. La. C.C.P. art. 2003. Further, a final judgment obtained by fraud or ill practices may be annulled. An action to annul must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices. La. C.C.P. art. 2004.

Parties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971. This "freedom of contract" signifies that parties to an agreement have the right and power to construct their own bargains. However, the state may legitimately restrict the parties' right to contract if the proposed bargain is found to have some deleterious effect on the public or to contravene some other matter of public policy. Therefore, in a free enterprise system, parties are free to contract except for those instances where the government places restrictions for reasons of public policy. *Skannal v. Jones Odom Davis & Politz, L.L.P.*, 48,016 (La. App. 2 Cir. 9/25/13), 124 So. 3d 500, *writ denied*, 13-2887 (La. 2/21/14), 134 So. 3d 584; *Family Care Services, Inc. v. Owens,* 45,505 (La. App. 2 Cir. 8/11/10), 46 So. 3d 234.

Louisiana Rules of Professional Conduct 1.5(c) provides:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by Paragraph (d) or other law.[4] A contingent fee agreement shall be in a writing signed by the client. A copy

---

[4] Paragraph (d) provides:

A lawyer shall not enter into an arrangement for, charge, or collect: (1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or (2) a contingent fee for representing a defendant in a criminal case.

or duplicate original of the executed agreement shall be given to the client at the time of execution of the agreement. The contingency fee agreement shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; the litigation and other expenses that are to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

In *Skannal*, *supra*, this Court stated:

Louisiana courts have long approved of the contingent fee contract to compensate attorneys. The Louisiana Supreme Court has defined a contingent fee contract as a contract for legal services in which the attorney's fee depends upon success in the enforcement of the client's claim. The attorney bears the risk of loss insofar as his legal services are concerned. Such contracts promote the distribution of needed legal services by reducing the risk of financial loss to clients and making legal services available to those without means.

*Id*. at 510.

In *Marshall v. Wells*, 381 So. 2d 551 (La. App. 2 Cir. 1980), this Court considered a claim of absolute nullity with regard to a contingency fee agreement. The plaintiff and his brother entered into a contingency fee agreement with the defendant, in exchange for the handling of a succession. Pursuant to the agreement, the defendant would be paid "25 percent of whatever amount was collected if the claim was settled, or 33 1/3 percent if it was necessary to institute a lawsuit." The plaintiff and his brother agreed to convey certain real estate to the agreement. Several years later, the plaintiff filed a lawsuit, alleging the agreement was unreasonable, constituted excessive consideration for services performed, was contracted

8

in bad faith, was unjust enrichment, and violated the Code of Professional

Responsibility.  The trial court sustained the defendant's exception of

prescription.  This Court affirmed, stating:

> There is nothing, per se, illegal or in derogation of public order
> or morals about a contingency-fee contract for professional
> services to be rendered in connection with the handling of a
> succession and ancillary matters in connection with leasehold
> rights and interests, or in an attorney acquiring an interest in the
> succession property as consideration for professional services
> rendered. Accordingly, the contract and deeds, although
> perhaps voidable under the allegations of the petition, are not
> absolutely null and imprescriptible.

*Id*. at 552-3. (internal citations omitted).

In the instant case, the contingency agreement at issue provided, in

pertinent part:

***

> 1. **ATTORNEY'S FEES.**  As compensation for legal services,
> I agree to pay my Attorney as follows:
>
> **Contingency Fee**
>
> Attorney shall receive the following percentages recovered
> before the deduction of costs and expenses as set forth in
> Section 2 herein:
>
> 33% if settled without suit;
> 33% in the event suit is filed;
> 33% in the event a trial actually starts;
> 40% in the event an appeal is filed by any party;
> 40% in the event of a concursus proceeding.
>
> It is understood and agreed that this employment is upon a
> contingency fee basis and, if no recovery is made, I will not be
> indebted to my Attorney for any sum whatsoever as Attorney's
> Fees OR costs. The contingency fee takes into account that
> attorney will cover substantial costs as they accrue, with client
> not having to pay for any such costs in advance, such costs to
> be covered by the percentage designated above at the time of
> recovery.

***

(emphasis in original).

We see no merit to plaintiff's claim with regard to the contingency contract being an absolute nullity due to excessiveness. This contingency fee agreement has been subject to judicial oversight for a number of years. Our review of the contract reveals it sets forth an unambiguous agreement, whereby defendants would be paid 33% of what was recovered, *i.e.*, property. The pleadings and exhibits demonstrate the complex and multifaceted nature of these proceedings. It is undisputed the decedent and her family were unable to afford legal representation, and from the outset, defendants advanced substantial costs, including the procurement of medical experts, for the interdiction proceedings. Thereafter, defendants assumed additional risks and costs by successfully pursuing litigation which, ultimately, resulted in the decedent regaining ownership of her property. Moreover, the plaintiff made no allegation or showing the August 28, 2018 judgment was "obtained by fraud or ill practices." Based on this record, we see no deleterious effect on the public or any violation of any rule of public order which would render the contingency contract an absolute nullity.

The record demonstrates the contingency agreement was executed on January 13, 2015. The judgment authorizing Rekeisha to execute documents to comply with the contingency contract was rendered on August 28, 2018 and was not appealed. Further, the partial summary judgment finding defendants were entitled to attorney fees pursuant to the contingency agreement was rendered on April 20, 2021 and was not appealed. Moreover, plaintiff, as the executor of the succession, paid the amount of fees owed to defendants in October 2021. Plaintiff's former counsel drafted and faxed a petition to annul on April 19, 2021. More than one year later, plaintiff actually filed the petition to annul at issue, asserting the identical facts to

those asserted in pleading faxed, but not filed, in April 2021. Under the facts of this case, plaintiff has failed to meet her burden of proving the contingency contract was an absolute nullity and, therefore, not subject to prescription. We find no manifest error in the trial court's finding the claims have prescribed.[5]

We pretermit as unnecessary any discussion of plaintiff's argument with regard to the ruling on the dilatory exception of improper use of a summary proceeding.

Plaintiff also contends the trial court erred in finding she and the estate are liable "jointly and in solido" for the costs, fees, and expenses defendants incurred in defending the nullity action. She argues she filed the action in her capacity as the administrator of the succession, and she should not be held personally responsible for any costs, fees, and expenses.

The portion of the trial court's judgment to which plaintiff refers provides as follow:

> **** [T]he Defendants having prevailed in the above captioned action, that ***Kelly Fuller as Administrator of the Estate of Revoyda Fuller, jointly and in solido with the Estate of Revoyda Fuller*** is hereby cast with all attorney's fees, costs, and expenses of [defendants] incurred in defending the above captioned action and any related or future actions resulting from the Plaintiff's Petition for Absolute Annulment and for Declaratory Relief[.] ***

(Emphasis added).

We do not interpret the trial court's judgment to mean Fuller is liable, in her individual capacity, for costs, fees, and expenses. Rather, the trial court cast Fuller, in her capacity "*as Administrator of the Estate of Revoyda*

---

[5] Because we have concluded plaintiff has not met her burden of proving the contingency contract was absolutely null, we will not address plaintiff's argument regarding the nullity of the August 28, 2018 judgment.

*Fuller*, jointly and in solido *with the Estate of Revoyda Fuller*," with costs, fees, and expenses defendants incurred in defending the petition to annul. Based on our review of the record, as well as the language set forth in La. C.C.P. art. 2004, we cannot say the trial court erred.

*Answer to Appeal*

Jacobs has answered the appeal, asking this Court to award "all damages, including attorney fees, for frivolous appeal, as well as costs as permitted under [La. C.C.P. arts.] 863, 2164, 2004, and any other applicable legal provision that supports an award of for fees and costs related to an appeal." Jacobs argues he is entitled to damages, fees, and costs because the appeal is "frivolous; groundless; brought in bad faith; brought for an improper purpose, which was to cause unnecessary delay, harass the Defendant/Appellee, and/or needlessly increase the cost of litigation or the duration of the litigation; and/or not warranted[.]"

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable. La. C.C.P. art. 2164. This provision is penal in nature and is to be strictly construed. *Neal Through Henshaw v. Cash*, 54,579 (La. App. 2 Cir. 6/29/22), 343 So. 3d 324; *Aymond v. Citizens Progressive Bank*, 52,623 (La. App. 2 Cir. 6/26/2019), 277 So. 3d 477, *writ denied*, 19-1200 (La. 10/15/2019), 280 So. 3d 602.

Damages for frivolous appeal are allowed only when it is obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious

12

legal question, or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such view is not meritorious. *Id*. The award of damages and attorney fees for a frivolous appeal are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law. *Id*. Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed. *Neal Through Henshaw*, *supra*; *Aymond v. Citizens Progressive Bank*, *supra*.

Although plaintiff was unsuccessful in proving her claims, considering the legal issues raised, we cannot say this appeal is frivolous. We deny Mr. Jacobs' request for frivolous appeal damages.

## CONCLUSION

For the reasons set forth herein, we affirm the trial court's judgment granting defendants' peremptory exception of prescription and casting Fuller, in her capacity as administrator of the estate, with attorney fees defendants incurred in defending the nullity action. Mr. Jacobs' request for frivolous appeal damages is denied. Cost associated with this appeal are assessed to plaintiff-appellant, Kelly Fuller, administrator for the Estate of Revoyda V. Fuller.

**AFFIRMED.**