# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 31, 2012

No. 11-30788

Lyle W. Cayce
Clerk

CHRISTOPHER WHITE,

Plaintiff-Appellant

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; STATE
FARM LIFE INSURANCE COMPANY; STATE FARM FIRE & CASUALTY
COMPANY; STATE FARM GENERAL INSURANCE COMPANY,

Defendants-Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:09-CV-991

Before REAVLEY, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Christopher White appeals the district court's judgment dismissing with prejudice his claim for bad-faith breach of contract and his state-law racial discrimination claim against Defendant-Appellants State Farm Mutual Automobile Insurance Company, State Farm Life Insurance

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30788

Company, State Farm Fire & Casualty Company, and State Farm General Insurance Company (collectively "State Farm").

We AFFIRM the judgment with respect to the discrimination claim. With respect to the contractual claim, we REVERSE the judgment and REMAND the case for further proceedings.

## I. BACKGROUND

White worked as an agent under a one-year agency agreement, effective from March 1, 2007, until February 29, 2008, during which he operated an agency in Baton Rouge, Louisiana. The agency agreement obliged White to establish a State Farm insurance agency and operate it according to State Farm's policies. The agreement states that "[State Farm] and [White] expect that by entering into this Agreement, and by the full and faithful observance and performance of the obligations and responsibilities herein set forth, a mutually satisfactory relationship will be established and maintained." The agreement obliged State Farm to allow White to control his daily activities and to exercise his own judgment in running his agency and otherwise carrying out the agreement. State Farm was also obliged to provide White with information and guidance regarding the operation and management of the agency, to "from time to time . . . designate specific employees to offer advice to [him] regarding [his] activities," and to invite White to meetings "for the purpose of introducing new products, ideas, services and procedures, promoting sales, and furnishing [him] with assistance, guidance, and consultation." The agreement did not guarantee renewal. It stated that "State Farm has no obligation to offer any additional agreement, and State Farm reserves the right to decide whether or not to offer an additional agreement to the agent."

State Farm designated Eric Andrews and John Michelli to provide White with assistance in operating his agency. At his deposition, White testified that Andrews and Michelli did not allow him to control the daily operation of the

2

agency office, nor which employees he hired or retained. He was not allowed to select the office location, and he did not have control over which State Farm insurance products on which to focus his marketing efforts.

Andrews and Michelli failed to provide White with assistance, beyond some guidance as to the hours the agency's office should be open. White would receive a call from Andrews and Michelli about once a month, whereas another State Farm agent on a temporary contract testified that Andrews would call him once a week. At one point White suggested that Andrews meet with him on a weekly basis, but Andrews came to only one meeting. He arrived smelling like liquor, either intoxicated or suffering from a hangover. On another occasion, Andrews cancelled a meeting with White at the last minute, saying he was "too hung over" to meet. And he was intoxicated when he met with White at a gathering of State Farm agents. White reported the issues with Andrews's drinking to Michelli and to a more senior State Farm representative, Robert Englund.

When White, Andrews, and Michelli met for White's six-month review, Michelli and Andrews were largely satisfied with White's performance. But Michelli called White just over a week later and said that he had learned that White had reported Andrews' drinking to Englund, and he was angry with White for that. Around the same time as the call, Michelli emailed White a memo in which Michelli expressed an assessment of White's overall performance that was much more critical than the view he expressed at the six-month review meeting. White was also held responsible for customer service incidents that were outside of his or his subordinates' control. Fearing more retaliation from Michelli, White was reluctant to complain to more senior State Farm staff about Michelli and Andrews' failing to assist him. On January 4, 2008, State Farm told White he would not be offered renewal after his contract expired on February 29.

No. 11-30788

White is African-American. Believing he had been treated differently than white first-year agents, he filed a discrimination charge with the Equal Employment Opportunity Commission in November 2008. The EEOC sent him a right-to-sue letter on April 27, 2009. He filed this suit on July 24, 2009, in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana.

White's petition alleged that he had been treated differently from other first-year agents because of his race, and he related various circumstances suggesting racial bias. The petition's factual allegations also relate some of the ways in which Andrews and Michelli had failed to support White in running the agency. The petition stated that Andrews "repeatedly showed up for White's evaluations . . . while under the influence of alcohol," that Michelli "became enraged and threatening" when White complained about Andrews' drinking, and that White was given unfavorable performance reviews on the basis of routine customer complaints. White brought claims under Title VII for racial discrimination and retaliation, a racial discrimination claim under the Louisiana Employment Discrimination Law ("LEDL"), LA. REV. STAT. § 23:301, *et seq.*, a retaliation claim under LA. REV. STAT. § 51:2256(1), a claim under Louisiana's "abuse-of-rights" doctrine, and a claim alleging that the above actions "were done in bad faith and constitute breaches of Defendants' implied duty to perform its contractual obligations in good faith." The petition cited LA. CIV. CODE art. 1983, which makes contractual promises legally obligatory in Louisiana and requires they be performed in good faith.[1] The petition also cited LA. CIV. CODE art.

---

[1] LA. CIV. CODE art. 1983 provides:

Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.

No. 11-30788

1994,[2] which imposes monetary liability for breaching a contract, and Articles 1997[3] and 1998,[4] which relate to the measure of damages for the breach.

State Farm removed the case to federal court and then filed a motion to dismiss the bad-faith breach-of-contract claim, the abuse-of-rights claim, and the state-law retaliation claim. State Farm contended that the bad-faith breach-of-contract claim and the abuse-of-rights claim were subject to the one-year prescription period for delictual actions provided by LA. CIV. CODE art. 3492. The district court granted the motion, concluding that those claims sounded in tort, and were therefore subject to LA. CIV. CODE art. 3492's one-year period.

State Farm later moved for summary judgment on the merits of White's LEDL claim and his federal-law discrimination claims. State Farm contended that White's LEDL claim was prescribed under the one-year period provided by LA. REV. STAT. § 23:303(D). State Farm also offered evidence that White's

---

[2] LA. CIV. CODE art. 1994 provides:

An obligor is liable for the damages caused by his failure to perform a conventional obligation.

A failure to perform results from nonperformance, defective performance, or delay in performance.

[3] LA. CIV. CODE art. 1997 provides:

An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.

[4] LA. CIV. CODE art. 1998 provides:

Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.

Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

performance as an agent had not been satisfactory, in order to show a legitimate non-discriminatory reason for declining to renew his contract. State Farm's summary judgment motion did not discuss the bad-faith breach-of-contract claim. White mentioned the contract, however, in his response. Addressing State Farm's proffered non-discriminatory reason, White argued that his performance could not have been unsatisfactory given State Farm's failure to support him as promised in the agreement.[5] With respect to the LEDL claim, White disputed when his claim accrued and argued that LA. REV. STAT. § 23:303's one-year period should not apply.

The district court granted the summary-judgment motion. The court concluded that White's LEDL claim accrued on January 4, 2008, when he was informed he would not receive a new contract and prescribed one year later under LA. REV. STAT. § 23:303. Regarding White's contractual claim, the district court stated:

> [I]n the opposition to the motion for summary judgment, plaintiff briefly mentions a breach of contract claim. Insofar as plaintiff may have intended reference to his claim of breach of the implied duty of good faith, that claim has already been dismissed, and the mention may be due simply to a typographical error. To the extent that plaintiff may have intended to assert a claim for breach of contract aside from the claim of breach of the implied duty of good faith, the Court's review of the record has demonstrated no previous assertion of such a claim. Moreover, plaintiff has failed to direct the court to any specific provision of the contract which defendants are alleged to have breached. More importantly, plaintiff has failed to set forth evidence to establish a genuine dispute of fact regarding a breach of contract claim.

The district court then entered a judgment dismissing the entire case with prejudice, and White filed this appeal.

---

[5] White abandoned his Title VII claims.

No. 11-30788

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of a motion to dismiss *de novo*, viewing the facts as pleaded in the light most favorable to the non-moving party. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). We also review the district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 228 (5th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering the evidence, we view the facts in the light most favorable to the non-movant. *Chaney*, 595 F.3d at 229. "To determine issues of state law, we look to the final decisions of that state's highest court." *Id.* In the absence of such a decision, we must attempt to predict "how that court would resolve the issue if presented with the same case." *Id.* (internal citation and quotation marks omitted).

### B. The LEDL Claim

White contends that the district court erred in finding that his LEDL claim is prescribed. We disagree. White brought his LEDL claim under LA. REV. STAT. § 23:332(F),[6] and LA. REV. STAT. § 23:303(D) provides that "[a]ny cause of action provided in [LA. REV. STAT. §§ 23:301—72] shall be subject to a

---

[6] Under § 23:332(F), an insurer may not:

(1) Intentionally fail or refuse to appoint or to discharge any insurance agent, or otherwise to intentionally discriminate against any insurance agent with respect to his compensation, terms, conditions, or privileges of employment, because of the insurance agent's race, color, religion, sex, or national origin.

(2) Intentionally limit, segregate, or classify his insurance agents or applicants for an insurance agent in any way which would deprive or tend to deprive any insurance agent or applicant of employment opportunities, or otherwise adversely affect his status as an insurance agent or applicant because of the insurance agent's or applicant's race, color, religion, sex, or national origin.

prescriptive period of one year." As to when the claim accrued, the district court followed the Louisiana Supreme Court's holding in *Eastin v. Entergy Corp.*, 865 So. 2d 49 (La. 2004), that in employment discrimination cases "prescription begins to run when the termination decision has been made and conveyed to the employee, even if the employment does not cease until a future date." *Id.* at 54. *Eastin* relied on Title VII case law stating that "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Id.* (citation and internal quotation marks omitted, emphasis in original). The district court applied that reasoning to this case, viewing State Farm's decision to refuse to offer White another contract as the discriminatory act. As noted above, White was told of that decision on January 4, 2008, more than one year before he filed suit. We see no flaw in that reasoning, nor any reason why White's status as an independent contractor would prompt the Louisiana Supreme Court to apply a different analysis.

## C. The Contractual Claim

White contends that the district court erred in characterizing his bad-faith breach-of-contract claim as a tort claim subject to LA. CIV. CODE art. 1983's one-year prescription period.[7] We agree. "Louisiana jurisprudence is well settled that the character of an action given by a plaintiff in his pleadings determines the prescription applicable to it." *Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts*, 354 So. 2d 192, 194 (La. 1978). "It is the nature of the duty breached that should determine whether the action is in tort or in contract." *Roger v. Dufrene*, 613 So. 2d 947, 948 (La. 1993). "Contractual damages arise out of the breach of a special obligation contractually assumed, and delictual damages

---

[7] "Delictual actions are subject to a liberative prescription of one year," LA. CIV. CODE art. 3492, whereas contractual claims are subject to the default prescription period set by LA. CIV. CODE art. 3499, which states that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." *See also Qayyum v. Morehouse Gen. Hosp.*, 874 So. 2d 371, 374 (La. Ct. App. 2004).

No. 11-30788

arise out of the violation of a duty owed to all persons." *Strahan v. Sabine Retirement & Rehab. Ctr., Inc.*, 981 So. 2d 287, 291 (La. Ct. App. 2008). All of the damages White seeks in this claim arise from the alleged breach of the provisions of the agreement requiring State Farm to support White's agency and allow him discretion in operating it.

The district court reasoned that "a claim of a breach of the duty to act in good faith does not allege a breach of an obligation imposed by contract, but instead alleges the breach of a separate duty implied by law or imposed by statute." However, breaching the obligation to perform a contract in good faith is actionable only when conjoined with breach of a particular obligation created by the contract. *Favrot v. Favrot*, 68 So. 3d 1099, 1110 (La. Ct. App. 2011) ("[J]udicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform, or a breach of the contract.")[8] While the duty to perform in good faith does arise from LA. CIV. CODE art. 1983 rather than the parties' agreement alone, that is true of all Louisiana-law contractual obligations.[9] The only differences between a typical breach-of-contract claim and a bad-faith breach-of-contract claim are that the latter alleges a culpable mental state and allows the

---

[8] If the contract allows a party discretion in carrying out an obligation, the underlying breach may take the form of the party exercising that discretion in a manner calculated to injure or deceive the other party. *See Adams v. First Nat'l Bank of Commerce*, 644 So. 2d 219, 222 (La. Ct. App. 1994). The district court relied on *Office of Comm'r of Ins. v. Hartford Fire Ins. Co.*, 623 So. 2d 37 (La. Ct. App. 1993). But that case involved an action for "breach of the duties of 'good faith' and 'reasonable care' imposed by [LA. REV. STAT.] 40:1299[.44](C)(7) . . . ," not bad-faith breach of contract. *Id.* at 40.

[9] *See* LA. CIV. CODE art. 1983 ("Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law.")

*See also*, *e.g.*, *Family Care Servs., Inc. v. Owens*, 46 So. 3d 234, 241 (La. Ct. App. 2010) (citing LA. CIV. CODE art. 1983 for the proposition that "Contracts have the effect of law for the parties and must be performed in good faith"); *Davis v. Russell*, 26 So. 3d 950, 952 (La. Ct. App. 2009) (same).

recovery of all the damages from the defendant's failure to perform, rather than merely those that were reasonably foreseeable.[10] We believe that the Louisiana Supreme Court would regard claims alleging breach of a contractual duty in bad faith as a species of breach-of-contract claim rather than one sounding in tort.

State Farm argues that White did not adequately plead the contractual claim. Although we recognize that White's pleading fell short of what FED. R. CIV. P. 8 would require, White initially filed his case in Louisiana state court, and that state's fact-pleading standard does not require a plaintiff to spell out the particular legal theories under which the facts he alleges entitle him to recovery.[11] "After removal, repleading is unnecessary unless the court orders it," FED. R. CIV. P. 81(c)(2), so we do not fault White for failing to spontaneously amend his pleading to conform to the federal pleading standard. Moreover, the federal pleading standard "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (internal citations, quotation marks, and ellipsis omitted). Although White's pleading should have identified the particular contractual provisions requiring support of his agency and giving him discretion to run it, State Farm was not unfairly prejudiced by that omission. Given the petition's factual allegations and the fact that any Louisiana bad-faith breach-of-contract claim must arise from breach of a particular contractual obligation, a liberal construction of White's petition suggests that his contractual claim arose from the agreement's provisions

---

[10] *Compare* LA. CIV. CODE art. 1996 ("An obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made"), *with* LA. CIV. CODE art. 1997 ("An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.").

[11] *See First S. Prod. Credit Ass'n v. Georgia-Pacific*, 585 So. 2d 545, 548 (La. 1991).

concerning support and discretion in running the agency.  Pre-trial procedures afforded State Farm ample opportunity to confirm that interpretation or otherwise compel White to clarify his theory of recovery.

## D.  White's Damages

State Farm contends that no claim for breach of the agreement can support damages resulting from White's not receiving a new contract, because the agreement unequivocally disclaims any obligation for State Farm to offer him a new agreement.  There is evidence, however, that White's compensation as an agent depended in part on the volume of his agency's sales.  He may have suffered recoverable losses to the extent that his performance was impaired by State Farm's failure to support him as promised.  Also, if White can prove that State Farm would have elected to renew their agreement but for its bad-faith breach of the support provisions, then the measure of his recovery will be "all the damages, foreseeable or not, that are a direct consequence of his failure to perform." LA. CIV. CODE art. 1997.  The parties did not raise in the district court or on appeal what effect State Farm's freedom to deny renewal would have in light of that expansive measure of damages.  They also have not raised the extent of whatever additional compensation White might have otherwise earned during his year as an agent.

Indeed, no challenge to the merits of White's contractual claim was properly raised before the district court.  State Farm's summary judgment motion did not address that claim, and White received no notice that the district court might address its merits in disposing of State Farm's motion.  *See* FED. R. CIV. P. 56(f).  We therefore leave all issues regarding the merits of the breach-of-contract claim for consideration in the first instance on remand.

## III. CONCLUSION

The district court's judgment is REVERSED with respect to White's claim for bad-faith breach of the one-year agency agreement, and the case is

No. 11-30788

REMANDED for further proceedings on that claim.  In all other respects, the district court's judgment is AFFIRMED.