# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41522

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2018

Lyle W. Cayce
Clerk

MARIA V. PEÑA, Individually and as Next Friend of M.J.P. and a Minor;
DANIEL PEÑA,

> Plaintiffs–Appellants,

versus

CITY OF RIO GRANDE CITY, TEXAS;
ROSA SALINAS, in Her Individual and Official Capacity;
LIEUTENANT JOSE SOLIS, in His Individual and Official Capacity,

> Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, OWEN, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Maria Peña sustained injuries as a result of a tasing by police officers for the City of Rio Grande City.  Peña sued the city and two of the officers in state court, alleging excessive force under 42 U.S.C. § 1983 and negligence under the

No. 16-41522

Texas Tort Claims Act ("TTCA").[1]  Upon removal, the district court denied Peña's motion for leave to amend, dismissed her claims against the officers, and entered judgment on the pleadings for the city.  Because the district court erred in disregarding Peña's proposed amended complaint, and because that complaint stated plausible claims against the officers, we vacate and remand for the court to consider whether Peña's pleadings survive the officers' defense of qualified immunity ("QI").  We affirm in part, vacate in part, and remand.

## I.

Peña sued the city, Lieutenant Jose Solis, and Officer Rosa Salinas after Peña was seized by Salinas with a taser.  The circumstances surrounding the incident are disputed, but it appears that the police intervened after observing an altercation between Peña and her father near their family car.  Officer Humberto Vela, the first to intercede, attempted to extract Peña from the back seat.  Peña fled, and Salinas pursued on foot.  At Solis's order, Salinas fired her taser at Peña, and the barbs attached to Peña's back and scalp.  She fell to the ground with injuries to her face and teeth.

Peña initially sued the city, alleging negligence under the TTCA, then added § 1983 excessive-force claims against the city, Salinas, and Solis.  The city moved for judgment on the pleadings, and the officers moved to dismiss for failure to state a claim and raised the defense of QI.  Upon removal to federal court, Peña twice sought leave to amend her state-court complaint, presumably to satisfy the federal pleading standard.  Both motions referenced her proposed amended complaint, but an exhibit of the complaint was attached only to her initial motion.  The district court looked only to Peña's second motion to amend

---

[1] Pena's parents were also plaintiffs in the initial suit, but their claims are not addressed in the briefing.  To the extent they are pursuing an appeal, their claims are abandoned.

and found that allowing the remaining amendments proposed in that motion would be futile. The court dismissed the claims against the officers without reaching the QI defense, and it entered judgment on the pleadings for the city.

## II.

Peña asserts the district court erred in evaluating her complaint under the federal "plausibility" standard instead of Texas's more lenient "fair notice" standard. She maintains that Federal Rule of Civil Procedure 8 does not apply to filings before removal.[2] This court has yet to address that question squarely, but our closest precedent and considerations of practicality weigh heavily against Peña's position.

A removed action does not need to be repleaded "unless the court orders it." FED. R. CIV. P. 81(c)(2). In a removed case, plaintiffs can rely on the state pleadings, whatever the state pleading standard, absent a challenge to their validity. *See White v. State Farm Mut. Auto. Ins. Co.*, 479 F. App'x 556, 561 (5th Cir. 2012) (per curiam). Where, as here, the defendants challenge the pleadings, we conclude, as we will explain, that the federal pleading standard applies.

In *International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016), this court's diversity jurisdiction depended on whether a non-diverse defendant was properly joined before removal. To answer that question, we first had to determine whether the plaintiffs had stated a claim against the non-diverse defendant in their state-court pleadings. *Id.* We concluded that the pleadings must be reviewed under the federal pleading standard because the question of improper joinder "[a]t

---

[2] *See* FED. R. CIV. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court.").

No. 16-41522

bottom . . . is solely about determining the *federal* court's jurisdiction." *Id.* at 202.[3] Peña asks that we distinguish *International Energy* on the ground that its reasoning was anchored in the underlying jurisdictional question. But there is no valid reason to cabin our decision in that way. Applying contextually dependent pleading standards to removed cases would bring more confusion than clarity, especially in areas of federal law with specialized pleading standards, intertwined with the QI defense. *Cf. Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016). Upon removal, the federal pleading standards control.

Peña complains this will unfairly prejudice plaintiffs, but our liberal amendment rules prove to the contrary. After the 21-day period in which pleadings may be amended "as a matter of course," "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(1)–(2). Removal from a notice-pleading jurisdiction is a natural time at which justice would call for the court to permit such an amendment. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1021 (9th Cir. 2013).

The district court should not have denied Peña leave to amend to conform to the federal standard. This circuit does not require a complicated motion to amend, but only that "the party requesting amendment" "set forth with particularity the grounds for the amendment and the relief sought."[4] The failure to attach a copy of the proposed complaint is not, on its own, fatal to a motion to amend. *Zaidi v. Ehrlich*, 732 F.2d 1218, 1220 (5th Cir. 1984); *Davis v. United*

---

[3] We also reasoned that this holding was compelled by *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), which held that "a Rule 12(b)(6)-type analysis" was one method for "predicting whether a plaintiff has a reasonable basis of recovery under state law" for the purposes of joinder. *Id.*

[4] *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386–87 (5th Cir. 2003)).

No. 16-41522

*States*, 961 F.2d 53, 57 (5th Cir. 1991). Though Peña failed to attach the amended complaint to her second motion, she pointed out, in both motions, that the case had been removed. Additionally, the proposed complaint was her first pleading in federal court upon removal. That is sufficient particularity to permit amendment, and the district court thus abused its discretion[5] in penalizing Peña for her clerical error.

Nonetheless, the failure of the district court to review the proposed complaint does not, on its own, compel remand. "[W]here the district court's denial of leave to amend was based solely on futility, this court applies a de novo standard of review 'identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6).'"[6] Under that standard, we must evaluate the sufficiency of the proposed complaint and decide which, if any, of Peña's claims survive the pleadings.

## III.

Peña can assert her claims only to the extent they pass the plausible-pleading test of *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).[7] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The city's motion for judgment on the pleadings is subject to this same standard. *Doe v. MySpace, Inc.*, 528 F.3d 413, 428 (5th Cir. 2008).

---

[5] *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (explaining that a denial of leave to amend is reviewed for abuse of discretion).

[6] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010)).

[7] *See generally* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.04[1][b] (3d ed. 2017).

No. 16-41522

### A. Section 1983 Claims Against Salinas and Solis

We have outlined the proper procedural framework for addressing § 1983 claims at the pleading stage. Regardless of whether QI is asserted, a district court must first "determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Anderson*, 845 F.3d at 589–90 (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)). Only after the regular pleading requirement is satisfied can the court "insist that a plaintiff file a reply tailored to [the defendant's] answer [or motion to dismiss] pleading the defense of qualified immunity." *Id.* at 590 (quoting *Schultea*, 47 F.3d at 1433–34). In *Anderson*, we first evaluated whether the complaint had sufficiently pleaded the elements of a First Amendment retaliation claim; only then did we proceed to the QI analysis. *Id.* at 590, 599. Here, the district court granted the officers' motions to dismiss without reaching QI. Under the above framework, we begin by reviewing that determination in light of Peña's proposed amended complaint.

Peña asserts that Solis and Salinas used excessive force to seize her in violation of the Fourth Amendment. Her proposed amended complaint alleges that Vela approached to arrest her and that she did not physically assault either Vela or her father. While attempting the arrest, Vela threatened and attempted to dry-stun Peña, but she ran away. Peña claims that she was unarmed, not a threat to third parties, and not suspected of a crime while she fled.

As Peña was fleeing, Solis gave three orders to the officers to fire their tasers. Salinas then fired hers while running, and the barbs lodged in Peña's scalp and back. Peña fell to the ground, "causing burns and breaking two of her front teeth." Once she was on the ground, Peña claims the electrical current continued to flow; Solis saw her "shaking" and ordered Salinas to turn off

No. 16-41522

her taser.  Peña alleges that "Salians deliver[ed] more than [one] electrical exposure charge" after she had been subdued.

To state a claim for excessive force, Peña's proposed complaint must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 487 (5th Cir. 2001) (citation omitted).  The second and third elements collapse into a single objective-reasonableness inquiry, *see Scott v. Harris*, 550 U.S. 372, 381 (2007), guided by the following *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Peña easily satisfies the injury prong.  The central question is whether she pleaded facts that plausibly suggest the officers' conduct was objectively unreasonable.  We analyze the officers separately because they are alleged to have participated in distinct ways:  Whereas Solis gave the order to tase, Salinas fired the neutralizing shot.  *Cf.  Kitchen v. Dallas Cty.*, 759 F.3d 468, 480 (5th Cir. 2014) (requiring separate QI analyses where the officers did not act in unison).

### 1. Salinas

Peña presents two factual grounds for an excessive-force claim against Salinas: (1) that Salinas used the taser to stop Peña from fleeing and (2) that she continued to apply an electrical charge to Peña after she had struck the ground.  The second allegation plausibly suggests objective unreasonableness.  In *Cooper v. Brown*, 844 F.3d 517, 523–24 (5th Cir. 2016), we distinguished the initial use of a dog bite to restrain a suspect from the continued application of that same bite once the suspect was no longer resisting.  We found it clearly

7

established "that once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Id.* at 524 (discussing *Bush v. Strain*, 513 F.3d 492, 502 (2008); *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012)).  More recently, in *Darden v. City of Fort Worth*, 866 F.3d 698, 706 (5th Cir. 2017), we held it objectively unreasonable to tase a suspect once he had "put his hands in the air" and was "no longer resisting arrest."[8]  Hence, the continued tasing of Peña once she had already hit the ground, and was no longer resisting, states a well-recognized excessive-force claim.

The initial tasing, however, presents a closer question, given that Peña was fleeing.  In *Newman*, which held it objectively unreasonable for officers to tase a non-resisting suspect, we specifically noted that "[n]o one contends that Newman attempted to flee." *Newman*, 703 F.3d at 763.  The absence of any evidence that the suspect had fled was significant likewise in *Deville v. Marcantel*, 567 F.3d 156, 167–68 (5th Cir. 2009), in which the police pulled a woman from her car during a traffic stop.

Our decision in *Zimmerman v. Cutler*, 657 F. App'x 340, 342 (5th Cir. 2016 (per curiam), arguably presents the closest factual analogue.  Zimmerman was struck with a taser after fleeing from the police, who had arrived to break up a verbal altercation. *Id.*  We did not reach the question of excessive force, deciding only "that at the time of Zimmerman's arrest it was not clearly established . . . that a single shot or use of a Taser to halt a fleeing misdemeanor suspect would amount to excessive force." *Id.* at 347.

Crucially, Peña's proposed complaint alleges that she was not suspected

---

[8] *See also Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012) (per curiam) (holding it objectively unreasonable to tase a suspect who was arrested, subdued, and "no longer resisting arrest"); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) (deferring to the jury's determination that officers acted in an objectively unreasonable manner in continuing to apply force "*after* a suspect has been restrained and *after* the suspect stops resisting").

of any crime when she fled, thus distinguishing her from the abovementioned plaintiffs. That characterization is belied by the police reports, but on a motion to dismiss, Peña's well-pleaded factual allegations enjoy a presumption of truth.[9] Given her plausible allegation that she was a non-suspect at the time of her initial tasing, Peña's pleadings in this regard also state a claim against Salinas for excessive force.

### 2. Solis

Two theories of § 1983 liability potentially apply to Solis's order to tase Peña: supervisor and bystander liability. The former obtains "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted, alterations and emphasis in original).

Peña alleges that "Lt. Jose Solis . . . gave the order to tase Maria Julissa Peña . . . three (3) times." We infer from the inclusion of his title, "Lieutenant,"

---

[9] *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Defendants suggest that the court must presume the allegations in the police report to be true because Peña incorporated the report into her complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference[.]"); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (same). But Peña's proposed complaint expressly rejects those elements of the police report that conflict with her account. Hence, for purposes of Rule 12(b)(6), we presume only that the officers made the assertions contained in the report, not that those assertions are in fact truthful.

and the use of "order," that Solis was in a position to direct Salinas to use the taser against Peña. A superior officer issuing a direct order to a subordinate to use excessive force demonstrates both the necessary action and causality for a supervisor-liability claim. Peña's proposed amended complaint thus stated a claim against Solis under this theory.

There is bystander liability for an "officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force . . . ." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). This theory most naturally applies to the allegation that the electrical charge continued to be applied after Peña was on the ground and no longer resisting. The facts, as pleaded, relieve Solis from liability on this theory. As pleaded, it was Solis who noticed that Peña was "'shaking' from the electrical current *and then* ordered Officer Salinas to 'shut off the taser.'" Solis took "reasonable measures" to stop the application of the charge once he noticed Peña was still "shaking" on the ground. The proposed complaint does not state a claim against Solis on this theory.

### 3. *Qualified Immunity*

Having determined that Peña sufficiently pleaded Fourth Amendment violations by both officers, we would ordinarily turn to QI and decide whether said violations were clearly established at the time of the incident. *Anderson*, 845 F.3d at 599. But the district court found the complaint deficient on its face and never reached QI. Because, as a "general rule," we do "not consider an issue not passed upon below,"[10] we remand for the district court to decide in the first instance whether QI defeats Peña's proposed amended complaint.[11]

---

[10] *Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).

[11] *See Zapata v. Melson*, 750 F.3d 481, 485–86, 486 n.3 (5th Cir. 2014) (applying this

No. 16-41522

## B. *Section 1983 Claims Against the City*

On appeal, Peña presses two theories of municipal liability: that the city (1) had a policy of tasing juvenile non-suspects and moving targets without regard for resulting secondary injuries and (2) failed adequately to train its officers not to use a taser in the aforementioned circumstances. Though Peña need not offer proof of her allegations at this stage, she still must plead facts that plausibly support each element of § 1983 municipal liability under either theory. *See Iqbal*, 556 U.S. at 678.

### 1. *Policy Liability*

We begin with the three elements of municipal liability under § 1983: "[A] plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted), *cert. denied*, 2017 U.S. LEXIS 7214 (U.S. Dec. 4, 2017). Peña's complaint fails the first two prongs.

The first policy prong "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted); *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009). To proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).[12]    Peña's complaint identifies just two "specific facts," and neither

---

rule in the context of QI); *Randle v. Lockwood*, 666 F. App'x 333, 336–37 (5th Cir. 2016) (per curiam) (same).

[12] *See also Iqbal*, 556 U.S. at 678 (suggesting that a complaint must contain sufficient

plausibly suggests that the city has a policy of tasing non-suspect minors.

Peña first cites the police department's written taser policy—reaffirmed six weeks before the incident—that allows for the tasing of moving targets. But that policy is neither unconstitutional on its face nor causally connected to Peña's excessive-force claim. As noted above, Peña's allegations against the officers survive Rule 12(b)(6) not because she was running but because she was a *non-threatening non-suspect*. A felon in flight presents another matter entirely. Because the written policy that Peña identifies is causally irrelevant, it cannot demonstrate the persistent practice she alleges.[13]

Aside from the abovementioned policy, the only "specific fact" in the complaint is the single incident in which Peña was involved. But plausibly to plead a practice "so persistent and widespread as to practically have the force of law," *Connick*, 563 U.S. at 61, a plaintiff must do more than describe the incident that gave rise to his injury. In *Spiller*, 130 F.3d at 167, we rejected, as "vague and conclusory," a claim by a black motorist, arrested without probable cause, that his arrest resulted from the police department's general policy of "disregard[ing] . . . the rights of African American citizens" and of "engag[ing] [African Americans] without regard to probable cause to arrest." Though Peña characterizes the relevant policy with greater particularity, her allegations are equally conclusional and utterly devoid of "factual enhancements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).[14]

---

"factual enhancement[s]" to cross the plausibility threshold) (citing *Twombly*, 550 U.S. at 557).

[13] *See Spiller,* 130 F.3d at 167 (rejecting, in part, a municipal-liability claim arising out of excessive force by police, because the alleged departmental policies were not "causally connected" to the officer's conduct).

[14] *See also Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (affirming dismissal for failure to state a *Monell* claim where alleged misconduct pertained only to plaintiffs); *Spiller*, 130 F.3d at 167; *Von Eschen v. League City Tex.*, 233 F.3d 575 (table), 2000 WL

No. 16-41522

The complaint also fails § 1983's "policymaker" prong. In *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016), we clarified that, because the identity of the policymaker is a legal question, courts should not "grant motions to dismiss for failing to plead [a] specific identity." Rather, "the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Id.* at 284. The plaintiff in *Groden* carried his burden of connecting the policy to the city council by alleging that the city "publically announced" the policy and that its "spokesman" gave "media interviews describing the new policy." *Id.* at 286.

A city cannot be liable for an unwritten custom unless "[a]ctual or constructive knowledge of such custom" is attributable to a city policymaker. *Hicks-Fields*, 860 F.3d at 808. Peña's complaint invites no more than speculation that any particular policymaker, be it the chief of police or the city commission, knew about the alleged custom.[15] Without more, her allegation fails the second prong of § 1983 as well.

---

1468838, at *1 (5th Cir. Sept. 8, 2000) (per curiam) (unpublished) (holding that a plaintiff failed plausibly to plead a persistent practice of misclassifying defendants' sex-offender status when he pointed to "only one or, at most, two other similarly situated defendants"); *Prince v. Curry*, 423 F. App'x 447, 451 (5th Cir. 2011). At least twice, this court has rejected widespread-practice claims for failure to demonstrate a pattern of similar incidents. *See Peterson*, 588 F.3d at 851 (holding 27 similar incidents insufficient to establish a pattern of unconstitutional conduct by city police); *Pineda v. City of Hous.*, 291 F.3d 325, 329–31 (5th Cir. 2002) (same for eleven such incidents). Though *Peterson* and *Pineda* were decided on summary judgment, they fairly suggest that a plausible claim requires more than a recitation of the incident in which the plaintiff was personally involved.

[15] In its reply brief, the city claims the city commission is the relevant policymaker. *But see* Police Department, CITY OF RIO GRANDE CITY, http://www.cityofrgc.com/departments/police_dept/index.php (last visited Dec. 12, 2017) (describing Police Department as "prescribing rules and regulations"); *Peterson*, 588 F.3d at 848 ("Here the parties agree that [the Police] Chief . . . has final policymaking authority over the . . . Police Department."). As noted above, the specific identify of the policymaker is neither here nor there, given Peña's utter failure to allege facts connecting this floating custom to any particular policymaker.

13

No. 16-41522

## 2. *Failure-to-Train Liability*

Peña's failure-to-train theory requires a plaintiff to prove that "1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Uphsur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001).  Peña's proposed complaint identifies multiple alleged inadequacies in the department's taser-training program.  She claims the city used uncertified taser trainers, that neither Solis nor Salinas was certified in taser use, and that officers were not trained regarding "secondary injuries for taser use," the "appropriate methods for handling minors," or "the legal use of force . . . and non-lethal weapons."  Of these many allegations, only the last bears a direct causal relationship to the specific constitutional violation at issue—the deployment of nonlethal weapons against minor non-suspects.[16]  Unfortunately for Peña, that allegation fails on the third, deliberate-indifference prong.

Because the "standard for [municipal] fault" is a "stringent" one, "[a] pattern of similar constitutional violations by untrained employees is ordinarily" required to show deliberate indifference.  *Connick*, 563 U.S. at 62 (quotes and citations omitted).  As noted above, Peña fails sufficiently to plead such a

---

[16] To clarify, a number of these alleged deficiencies *could be* causally related to the violation of Peña's Fourth Amendment rights.  For example, a certified taser trainer might emphasize the importance of not tasing non-suspects, or, perhaps, the process of becoming certified could require that Solis and Salinas *learn* that tasing of non-suspect minors is always ill-advised.  Peña has not pleaded to these possibilities.  But even if she had, all of the alleged deficiencies reduce to just one causally-relevant proposition: that Solis and Salinas were never trained on the use of nonlethal (tasing) force against non-suspect minors.  In other words, Peña's multiple allegations merely describe the many *means* by which the city could have exposed the officers to the single operative message: that officers ought not deploy their tasers against nonthreatening non-suspects.

14

No. 16-41522

pattern.

Peña suggests, in the alternative, that the single incident in which she was tased plausibly suggests deliberate indifference by the city. Though it is true that "a plaintiff may establish deliberate indifference" through "a single incident," *Burge v. St. Tammany Par.*, 336 F.3d 363, 372 (5th Cir. 2003) (citations omitted), Peña's allegations lie well beyond the reach of this narrow exception.

The Supreme Court first articulated the single-incident principle in *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989), by way of a hypothetical:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Id.* at 390 n.10. The Court has revisited the exception twice, each time declining to broaden its scope. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997); *Connick v. Thompson*, 563 U.S. 51, 63–71 (2011). In *Connick*, the Court was asked to extend the exception to a prosecutor's *Brady* violation. In rejecting that invitation, the Court drew an instructive distinction between the *Brady* violation and the hypothetical in *Canton*:

> The obvious need for specific legal training that was present in the *Canton* scenario is absent here. Armed police must sometimes make split-second decisions with life-or-death consequences. There is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force. And, in the absence of training, there is no way for novice officers to obtain the legal knowledge they require. Under those circumstances there is an obvious need for some form of training.

*Connick*, 563 U.S. at 63. The Court reasoned that those same considerations did not apply to "[a]ttorneys [who] are trained in the law and equipped with

15

No. 16-41522

the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment." *Id.*

Our caselaw suggests, however, that the exception is generally reserved for those cases in which the government actor was provided no training whatsoever. In *Brown v. Bryan County*, 219 F.3d 450, 453–54, 462 (5th Cir. 2000), we held the single-incident exception satisfied where a reserve deputy, with "*no training*" from the police department applied excessive force during a car chase. Our later decisions have distinguished *Brown*, emphasizing that "there is a difference between a *complete failure to train*[] . . . and a failure to train in one limited area."[17] Peña's proposed complaint acknowledges that Solis and Salinas received taser training from other officers, so her allegations cannot satisfy the exacting test for the narrow single-incident exception.

## C. *Texas Tort Claims Act*

For her claim against the city under the TTCA, Peña alleges that Salinas negligently aimed the taser at her while she was running. The district court dismissed that claim because Peña was "unable to establish that sovereign immunity ha[d] been waived." We agree.

The TTCA waives the sovereign immunity enjoyed by Texas municipalities only "to the extent of liability created by [the statute]." TEX. CIV. PRAC. & REM. CODE § 101.025(a). The TTCA limits its waiver of liability on personal injury claims to negligence involving "the operation or use of a motor-driven vehicle or motor-driven equipment" to the extent the employee would be

---

[17] *McClendon v. City of Columbia*, 258 F.3d 432, 442–43 (5th Cir. 2001), *vacated for reh'g en banc*, 285 F.3d 1078 (5th Cir.), *decision on rehearing en banc,* 305 F.3d 114 (5th Cir. 2002); *accord Peterson*, 558 F.3d at 849; *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 383, 386 (5th Cir. 2005); *Roberts v. City of Shreveport*, 397 F.3d 287, 295–96 (2005); *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 288 (5th Cir. 2002).

personally liable. *Id.* § 101.021.[18] Intentional torts are explicitly excepted from the waiver. *Id.* § 101.057.

Peña contends that sovereign immunity is waived to the extent Salinas negligently aimed the taser, even though seizing Peña with the taser is unquestionably an intentional tort. This court has already decided, in accordance with the holdings of the Texas Supreme Court, that such a theory is not cognizable under the TTCA: "Claims of excessive force in the context of a lawful arrest arise out of a battery rather than negligence, whether the excessive force was intended or not." *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017) (quoting *City of Watauga v. Gordon*, 434 S.W.3d 586, 593 (Tex. 2014)), *petition for cert. filed* (Nov. 6, 2017) (No. 17-686). "The determinative question is whether the negligence claim arises from the same facts that form the basis of the intentional-tort claim." *Id.*

Peña posits that Salinas's firing of the taser at Peña's head is an independent breach of a standard of care and thus negligence. But that is inextricably intertwined with the intentional tort of striking Peña with the taser,[19] and

---

[18] A governmental unit is liable for

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021.

[19] The Texas Supreme Court has previously rejected a similar thinly-sliced negligence claim in the context of a police seizure. It held that allegations that an officer "negligently ignored police procedure by continuing [a] pursuit" and "negligently ignored an order not to

No. 16-41522

*Quinn, id.*, forecloses Peña's effort to bifurcate those two actions. Thus, the TTCA does not waive sovereign immunity with respect to Peña's claims.

In sum, the claims against the city entirely fail, but the claims against the officers survive at least the first half of the proper analysis at the pleading stage. The judgment of dismissal is thus AFFIRMED IN PART, VACATED IN PART, and REMANDED, with instruction to consider whether Peña's pleadings against Solis and Salinas survive QI. We place no limitation on the matters that the district may consider and decide, as needed, on remand, and we make no suggestion as to the ultimate merits.

---

shoot at [a] car" were ultimately "intentional rather than negligent acts, and thus do not fall within the waiver of sovereign immunity." *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).