# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2024

Lyle W. Cayce
Clerk

No. 20-40580

James Chad York, *Individually*; Sandy Lynn Winfrey York, *Individually*; Loreal Fultz, *as Independent Administrator of*, and *on behalf of*, The Estate of Chaz Logan York and his *heirs-in law*,

*Plaintiffs—Appellants*,

*versus*

Chase Aaron Welch; The City of Beaumont,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:18-CV-522

Before Richman, *Chief Judge*, and Davis and Dennis, *Circuit Judges*.
Priscilla Richman, *Chief Judge*:[*]

After an off-duty police officer shot and killed Chaz York, his family and estate (collectively the Yorks) brought this 42 U.S.C. § 1983 suit against the officer and the City of Beaumont, the municipality that employed that officer. The district court dismissed the case based on a Rule 12(c) motion for judgment on the pleadings. Because the Yorks have not plausibly pleaded

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 20-40580

a theory of *Monell*[1] liability against the municipality, we affirm the district court's dismissal.

## I

This case presents tragic and unsettling facts. In October 2016, off-duty Beaumont Police Officer Chase Welch shot and killed Chaz York in the parking lot of Madison's, a restaurant and bar. The Yorks allege the following: An individual named Levi Severson assaulted Chaz without provocation on the patio area of the bar at Madison's. Madison's employees then expelled both Chaz and Severson from the premises, with Severson exiting the front entrance and Chaz being escorted through the back. While passing through the patio, Chaz encountered and began exchanging words with his ex-girlfriend. Madison's employees separated the two, then continued to escort Chaz from the premises, with one of the employees pushing and verbally arguing with Chaz along the way. Meanwhile, another individual appeared at the back of the bar, saying "Beaumont PD, Beaumont PD," but provided no further identification. That individual was Chase Welch.

After Chaz abandoned the confrontation at Madison's and left the premises accompanied by a friend, Welch and Madison's employees continued to follow Chaz around the building and to his vehicle. During that time, both Madison's employees and Welch engaged in verbal confrontations and threats with Chaz. When Chaz and his friend reached the vehicle, his friend helped Chaz into the backseat on the driver's side before seating herself behind the wheel. Once Chaz was inside, Welch continued to

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

No. 20-40580

threaten and harass Chaz, yelling at Chaz to "get out you pussy" and banging on Chaz's car with his hands while taunting Chaz.

As Chaz's friend prepared to drive away, she noticed Chaz had exited and was standing outside the vehicle. Chaz's friend followed Chaz out, grabbed him, and attempted to pull him back inside. As she did so, Welch discharged his firearm three times. Chaz turned and ran away from Welch as Welch continued to fire in Chaz's direction. Welch discharged eight to ten bullets in total, five of which struck Chaz—one in each arm, one in his right thigh, one in his chest, and one in his back. The fatal shots struck Chaz after he turned away from Welch. Welch then fled the scene. In contrast to the Yorks' allegation, Welch contends that he shot Chaz in self-defense after Chaz opened his car trunk, grabbed a baseball bat, and charged Welch.

The Yorks' First Amended Complaint alleges that Beaumont misrepresented to the public the events of the shooting by supporting Welch's version of events, and by describing the incident as a barroom fight that spilled into the parking lot. Further, the Yorks aver, Beaumont engaged in a cover-up of the shooting by failing to produce certain records requested during discovery—instead launching objections to those requests—and by accusing witnesses who claimed that Chaz was unarmed of "lying and 'tampering with evidence.'" Critically, however, the Yorks did not follow up on the discovery requests, failing to obtain rulings despite having ample time to do so.

Additionally, the Yorks highlight that Beaumont disciplined Welch for certain acts of prior misconduct, suspending him for multiple episodes, but did not discipline Welch for certain acts of misconduct involving allegedly unreasonable or excessive force, including the shooting and killing of Chaz. Welch received various promotions and salary increases despite this history, and Welch was not disciplined for shooting and killing Chaz. More generally,

3

the Yorks also highlight that from 2008 to 2018, Beaumont received 112 citizen complaints against the police department, thirty of which alleged unreasonable or unauthorized use of force. Beaumont sustained only twenty-one of the total 112 complaints. During that same period, roughly 8% of administrative complaints (eighteen out of 229) concerned the use of force. Finally, the Yorks underscore that Beaumont did not authorize its officers to carry their tasers while off duty; instead, they could carry only their firearm.

Chaz's family and estate brought this § 1983 action against both Welch and the City of Beaumont in October 2018, seeking relief for violations of the Fourth and Fourteenth Amendments. Welch ultimately settled with the Yorks out of court, leaving only their theory of *Monell* liability against Beaumont. In January 2019, the district court entered its scheduling order, thus beginning discovery, and in April 2019, the Yorks filed their First Amended Complaint. In response, Beaumont filed an untimely motion to dismiss under Federal Rule 12(b)(6). The district court converted the motion into a Rule 12(c) motion for judgment on the pleadings and granted it, reasoning that municipal liability under *Monell* could not attach.

## II

As an initial matter, the district court did not err when it construed Beaumont's untimely Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings.[2] In *Jones v. Greninger*,[3] this court explained that untimely Rule 12(b) motions "will be treated as a motion for judgment on the

---

[2] *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *see also Puckett v. Comm'r*, No. 99-20697, 2000 WL 554440, at *2 (5th Cir. Apr. 12, 2000) (per curiam) (unpublished).

[3] 188 F.3d 322 (5th Cir. 1999).

pleadings based on a failure to state a claim on which relief may be granted."[4] Accordingly, the district court committed no error when it treated Beaumont's untimely Rule 12(b)(6) motion as a Rule 12(c) motion.

This court reviews a district court's ruling on a Rule 12(c) motion de novo.[5] The motion is subject to the same standard as a motion to dismiss under Rule 12(b)(6).[6] Under that standard, set out by the Supreme Court in *Bell Atlantic Corp. v. Twombly*,[7] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[10]

A municipality cannot be held liable under a theory of *respondeat superior*.[11] Rather, "[i]t is only when the execution of the government's policies or custom inflicts the injury that the municipality may be held liable

---

[4] *Id.* at 324.

[5] *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

[6] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[7] 550 U.S. 544 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[9] *Id.*

[10] *Id.*

[11] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

under § 1983."[12] Per *Monell*, "municipal liability under section 1983 requires proof of three elements: [1] a policymaker; [2] an official policy; and [3] a violation of constitutional rights whose 'moving force' is the policy or custom."[13]

The second element—an official policy—includes "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority."[14] An official policy may also be "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy"[15] and "practically have the force of law."[16]

The third, "moving force" element requires that the plaintiff "show that the municipal action was taken with the requisite degree of culpability and . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[17] The culpability prong requires that the municipality be at least deliberately indifferent to the known or obvious

---

[12] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal quotation marks and ellipsis omitted) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)).

[13] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694).

[14] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam).

[15] *Id.*

[16] *Peña v. City of Rio Grande City*, 879 F.3d 613, 621-22 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

[17] *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

consequences of municipal actions.[18]    The causation prong requires proximate causation.[19]   "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[20]

"To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'"[21] Here, the Yorks allege six Beaumont policies that they argue give rise to *Monell* liability:

> *First*, Plaintiffs-Appellants identified that the City of Beaumont adopted a policy and/or custom in which its off duty officers were not allowed to carry tasers was a moving force behind the constitutional violations.    *Second*, Plaintiffs-Appellants identified that the City of Beaumont adopted a policy and/or custom in which its officers (whether off duty or not) were taught to shoot to kill, and not to shoot to injure was a moving force behind the constitutional violations.    *Third*, Plaintiffs-Appellants identified that the City of Beaumont's widespread and persistent use of excessive force by its officers, which became so common place as to constitute a custom and/or policy, was a moving force behind the constitutional violations.    *Fourth*, Plaintiffs-Appellants identified that the City of Beaumont's failure to train its officers in non-lethal weapons

---

[18] *See id.* at 407.

[19] *Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir. 1980).

[20] *Brown*, 520 U.S. at 405.

[21] *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

while off duty was a moving force behind the constitutional violations. *Fifth*, Plaintiffs-Appellants identified that the City of Beaumont's policy of a "code of silence" in which a cover up of instances of excessive force was a moving force behind the constitutional violations. *Sixth*, Plaintiffs-Appellants identified that the City of Beaumont's failure to discipline/ratification of Officer Welch's excessive use of force was a moving force behind the constitutional violations.

None of the Yorks' six theories satisfy the *Twombly* standard for two primary reasons: the alleged policies are not policies at all, or the alleged policies were not "moving forces" behind the underlying constitutional deprivation.

## A

The Yorks do not plausibly plead that either the off-duty taser-carry policy or the shoot-to-kill policy was a moving force behind the underlying constitutional violation. The Yorks seek to impose *Monell* liability based on Beaumont Police Chief Singletary's post-shooting interview in which Singletary stated Beaumont police officers do not carry tasers off duty, and later commented, "Officers are not taught to shoot at an arm or a leg, because it[']s dangerous if our officers are trained to shoot an arm or a leg in a high stress situation then they miss."[22] He explained, "these officers could get hurt or killed and innocent bystand[e]r[]s could get hurt or killed."[23]

The Yorks' argument concerning the off-duty taser-carry policy does not satisfy the causation prong, for any causal nexus between Beaumont's policies and Chaz's death is too attenuated to be considered a proximate

---

[22] Ashley DeVriend, *Police Chief supports officer after shooting*, KFDM (Oct. 18, 2016, 10:28 PM), https://kfdm.com/news/local/police-chief-supports-officer-after-shooting.

[23] *Id.*

cause of Chaz's death. As the district court pointed out, no policy required Welch to carry his firearm in lieu of his taser. The Yorks pled no facts tending to show that Welch would have carried and used a taser had he been permitted to do so. The district court properly dismissed this theory.

Nor do the Yorks plausibly allege that the shoot-to-kill policy was a moving force behind the constitutional violation. Shooting to kill and not injure is standard police practice,[24] and there is no allegation that the City had a policy that authorized or encouraged the use of lethal force in all encounters or in encounters like the one that allegedly occurred with Chaz.

## B

The Yorks have not plausibly pleaded that Beaumont maintained a policy of widespread and persistent use of excessive force. "If actions of city employees are to be used to prove a custom for which the municipality is liable," our court has reasoned, "those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[25]

In support of their theory that Beaumont adopted a custom of allowing excessive force, the Yorks cite to statistics from 2008 to 2018, "which showed 26% of all complaints"—thirty out of 112—"made about the City of Beaumont by citizens related to 'unauthorized use of force' or 'unreasonable use of force' claims." This "substantial number of similar complaints," the Yorks contend, shows "a pattern and practice of excessive force by its

---

[24] *See Experts on Why Police Aren't Trained to Shoot to Wound*, ABC News (July 7, 2016, 6:46 PM), https://abcnews.go.com/US/police-trained-shoot-wound-experts/story?id=40402933.

[25] *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984).

officers." Despite discovery beginning as early as January 2019, the Yorks failed to obtain factual context and detail concerning the alleged 26% of incidents of police misconduct. That failure brings this case within the purview of *Peterson v. City of Fort Worth*.[26]

In *Peterson*, the plaintiff sought to create a fact question to overcome summary judgment by citing "to 27 complaints of excessive force between 2002 and 2005."[27] Those complaints, he argued, revealed "that the city maintained an official policy that was permissive of excessive force."[28] The court rejected the plaintiff's theory due to the lack of factual development behind those complaints, noting that "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'"[29] The plaintiff in *Peterson* provided no information concerning the size of the police department or how many arrests that department made during the relevant time period.[30] The Yorks' generic statistics are likewise devoid of factual development and context.

The fact that the court decided *Peterson* at the summary judgment stage does not change our conclusion. At oral argument, counsel for the Yorks conceded that the Yorks served Beaumont with requests for production concerning those complaints against Beaumont and was met with objections to those requests but failed to obtain rulings on those objections.

---

[26] 588 F.3d 838 (5th Cir. 2009).

[27] *Id.* at 850.

[28] *Id.*

[29] *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

[30] *Id.* at 851-52.

No. 20-40580

As a result of that failure, the Yorks' theory of widespread use of excessive force cannot succeed. The Yorks "failed to provide context that would show a pattern of establishing a municipal policy" despite having the opportunity to do so.[31] Just as "27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy," so too are thirty citizen complaints over a ten-year period insufficient to establish a custom.[32]

## C

The Yorks have not plausibly pleaded that Beaumont's allegedly inadequate training of Welch was a moving force behind the underlying constitutional violation. To establish municipal liability under a failure-to-train theory, the Yorks must prove three elements: "1) [Beaumont] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[33] The Yorks argue that Beaumont failed to train its officers on non-lethal force while off duty, and that this failure amounted to "deliberate indifference" to the health and safety of the citizenry.

---

[31] *Id.* at 851.

[32] *Id.* at 852.

[33] *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001).

In *Littell v. Houston Independent School District*,[34] this court clarified the two means of proving municipal liability under a failure-to-train theory outlined by the Supreme Court in *City of Canton v. Harris*:[35]

> Sometimes . . . municipal employees will violate constitutional rights "so often" that the factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the policymakers." This proof-by-pattern method is "ordinarily necessary." But even absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy.[36]

The Yorks rely on the latter single-incident theory of liability.

The Yorks' First Amended Complaint does not plausibly plead that Beaumont was deliberately indifferent to the need, if any, for further training. This court has explained that "the [single-incident] exception is generally reserved for those cases in which the government actor was provided no training whatsoever."[37] Moreover, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[38] The Yorks' First Amended Complaint concedes that Welch "received significant training relating to the physical aspects of being a police officer." The Yorks argue that Welch "did not receive *any* training that

---

[34] 894 F.3d 616 (5th Cir. 2018).

[35] 489 U.S. 378 (1989).

[36] *Littell*, 894 F.3d at 624 (ellipsis omitted) (first quoting *Harris*, 489 U.S. at 390 n.10; then quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997); and then quoting *Brown*, 520 U.S. at 409).

[37] *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018).

[38] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiffs[]-Appellants could find relating to using *non-lethal* weapons *while off duty* by the Beaumont Police Department." But Welch did receive training about the use of non-lethal force, and the Yorks fail to allege how that training should have differentiated between on- and off-duty situations.

The Yorks' framing of this issue runs afoul of the reasoning of our decision in *Peña v. City of Rio Grande City*[39] and therefore fails. That case involved a minor suspect, Peña, who sought to hold a municipality liable after one of its officers tased her as she fled.[40] This court held that Peña could not satisfy the *Twombly* standard, explaining that "the [single-incident] exception is generally reserved for those cases in which the government actor was provided no training whatsoever."[41] Peña's complaint "acknowledge[d] that [the officers involved in the incident] received taser training from other officers, so her allegations [could not] satisfy the exacting test for the narrow single-incident exception."[42] Even accepting the Yorks' factual allegations as true—that Welch did not receive training in the use of non-lethal force while off duty—recovery on this theory is not plausible. The absence of training *while off duty* constitutes the "sort of nuance [that] simply cannot support an inference of deliberate indifference."[43] The district court properly dismissed this theory.

## D

The Yorks have not plausibly pleaded a theory of ratification. They argue that both Beaumont and Chief Singletary ratified Welch's conduct by

---

[39] 879 F.3d 613 (5th Cir. 2018).

[40] *Id.* at 616.

[41] *Id.* at 624.

[42] *Id.*; *see also Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624-25 (5th Cir. 2018).

[43] *Connick*, 563 U.S. at 67.

failing to discipline his use of excessive force in both the shooting giving rise to this suit and in past incidents. Additionally, the Yorks allege that Beaumont itself, through its official policymakers, engaged in misconduct by covering-up the details of the shooting through its denial and proffering of an alternative version of events.

However, this court has curtailed the applicability of a ratification theory. In *Peterson v. City of Fort Worth*, the plaintiff argued ratification based on the Police Chief's post-investigation determination that the offending officers' conduct "complied with the department's policies."[44] The court rejected this theory, explaining, "our precedent has limited the theory of ratification to 'extreme factual situations.'"[45] Further, "we have also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality."[46]

Whether a case presents an extreme factual situation—as in this court's opinion in *Grandstaff v. City of Borger*[47]—such that a theory of ratification applies is a question of law.[48] We hold that the facts of this case do not present such an extreme factual situation. In *Grandstaff*, "officers and a city police force failed, at great cost . . . [then] denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid

---

[44] 588 F.3d 838, 848 (5th Cir. 2009).

[45] *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).

[46] *Id.*; *see also Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (explaining that precedent "does *not* stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy").

[47] 767 F.2d 161 (5th Cir. 1985).

[48] *See Peterson*, 588 F.3d at 848 n.2 ("On the contrary, our conclusion rests on a legal determination that the facts here, even viewed in the light most favorable to Peterson, do not satisfy the legal standard set out in our ratification caselaw.").

legal liability."[49] The officers had pursued a suspect onto the ranch of an innocent third party, then recklessly "poured" gunfire on that third party, killing him.[50] "Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error."[51] Such striking misconduct, coupled with "the subsequent acceptance of dangerous recklessness by the policymaker," sufficed to support the jury's finding that the municipality had a custom of misconduct such that it could be held liable under *Monell*.[52]

Here, rather than "several officers in several episodes" engaging in police misconduct as in *Grandstaff*,[53] only a single officer was involved in a single shooting. Further, the officers in *Grandstaff* "were evasive and forgetful and self-contradictory,"[54] while here, despite having ample time to depose Beaumont policymakers and personnel and otherwise conduct discovery, the Yorks have offered only vague and conclusory allegations, devoid of factual enhancement, concerning Beaumont's alleged cover-up. The Yorks have not pleaded "enough facts to raise a reasonable expectation that discovery will reveal evidence of [illegality],"[55] in large part because discovery *has not* revealed evidence of illegality.[56]

---

[49] *Grandstaff*, 767 F.2d at 166.

[50] *Id.* at 168.

[51] *Id.* at 171.

[52] *Id.*

[53] *Id.*

[54] *Id.* at 166 & n.1.

[55] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[56] *Cf. Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir. 1989) ("As this Court has previously stated, a plaintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the

Moreover, at its core, in large part, the Yorks' ratification theory seeks to impose *Monell* liability on Beaumont based on Beaumont's disagreement with the Yorks' factual allegations. In other words, the Yorks treat a factual dispute as evidence of a more nefarious plot to cover up the shooting. For example, the Yorks contend that the cover-up "was seen in [Beaumont's] post-shooting reporting of Chaz York, wherein it immediately went on the defensive, stating that [Chaz] had a bat, and was a danger to the public." Though we must accept the Yorks' factual allegations as true, we need not accept their attempted bootstrapping of Beaumont's denial of particular factual allegations with evidence of a cover-up sufficient to survive a judgment on the pleadings. Instead, the plaintiff must present some factual allegations *aliunde* the defendant's denial.[57] The Yorks attempt to do so, but the remainder of the allegations concerning a cover-up are conclusory and devoid of factual enhancement and therefore insufficient to survive dismissal.[58] Under the Yorks' reasoning, anytime a municipality issued a press release, and something in that release turned out to be untrue, the plaintiff would necessarily survive Rule 12(b)(6) dismissal and be entitled to discovery. We decline to expand *Monell* liability in so drastic a regard.

---

requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion." (citing *Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1029-30 (5th Cir. 1983))).

[57] *Cf. Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) ("[T]he statement does not necessarily advocate or excuse the use of excessive force. Sheriff Ledbetter denied that such a meaning was either intended or in context was so understood. This denial was not rebutted by contrary evidence, and it follows that Jackson County could not be held liable on the basis of the sheriff's statement.").

[58] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

No. 20-40580

## E

Finally, the Yorks have not plausibly pleaded that Beaumont maintained a code of silence through which the municipality covered up instances of excessive force.  The Yorks argue that Beaumont adopted a code of silence under which Beaumont "cover[ed] up and/or fabricat[ed] stories when officers used excessive force."  The Yorks support this theory by again offering Beaumont police statistics, which detail that 74% of citizen complaints resulted in a lack of disciplinary action being taken against Beaumont officers.  Only 18.75% of citizen complaints were sustained.  The Yorks then reallege that Beaumont engaged in a cover-up, fabricating evidence and misleading the public about the circumstances of Chaz's killing.

On multiple occasions, our circuit has treated a code-of-silence theory as identical to a ratification theory.[59]  For the same reasons the Yorks' ratification theory fails, so too does the Yorks' code-of-silence theory. Additionally, we reiterate that the generic statistics the Yorks proffer lack the context necessary to render their claim facially plausible.  Moreover, the Yorks' attempted factual enhancements concerning Beaumont's alleged cover-ups of excessive force rely solely on the events surrounding Chaz's death, suggesting that any cover-up was an isolated incident and "not the persistent, often repeated constant violations that constitute custom and policy."[60]  Accordingly, the district court properly dismissed this theory.

---

[59] *See, e.g.*, *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) ("Quinn argues the police engage in a code of silence. . . .  A theory of ratification is limited to 'extreme factual situations.'" (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009))); *Snyder v. Trepagnier*, 142 F.3d 791, 797-98 (5th Cir. 1998) (construing *Grandstaff* as a code of silence case).

[60] *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).

No. 20-40580

\*     \*     \*

The circumstances behind Chaz's death are troubling. But the Supreme Court has repeatedly admonished that we distinguish acts of the municipality from those of its employees. The Yorks have not plausibly pleaded that Beaumont's conduct was a moving force behind Chaz's death. For the foregoing reasons, we AFFIRM the judgment of the district court.